George **JONES**, et al., Plaintiffs,

v.

**CITY OF CHICAGO**, et al., Defendants.

No. 83 C 2430.

United States District Court,
N.D. Illinois, E.D.

Dec. 12, 1984.

G. Flint Taylor, Jeffrey H. Haas, Chicago, Ill., for plaintiffs.

James D. Montgomery, Corp. Counsel, Chicago, Ill. by Robert L. Janega, Robert Fioretti, Chicago, Ill., and Terry McDonald, Asst. State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

### Background

This matter is before the court on the defendant City of Chicago's motion to disqualify plaintiff's counsel. The underlying case involves a civil rights action against the City of Chicago, Cook County, the Superintendent of the Chicago Police Department, various police officers, a lab technician employed by the Chicago Police Department and various lawyers from the Cook County State's Attorney office. The plaintiffs, George Jones and his parents brought this action following Jones' arrest and prosecution for the murder of Shelia Pointer and aggravated battery against her brother, Purvey. Plaintiffs' complaint describes the pertinent events as follows. On May 4, 1981, Shelia Pointer was raped and murdered and her brother Purvey was beaten. Purvey, near death and unable to

breathe on his own, was taken to the hospital. He remained comatose for seven days, until May 11 when he finally regained consciousness. Police questioned Purvey and finally on May 12, police showed Purvey a photo of Jones. Plaintiffs allege that although Purvey said he recognized Jones, he did not identify Jones as the perpetrator of the crimes committed against himself and his sister. Nonetheless, police went to Fenger High School where Jones was a student and arrested him.

Learning of his son's arrest, Jones' father called attorney Schmeidel and requested that Schmeidel and Schmeidel's partner, Haas, represent his son. Schmeidel went to the police station and then accompanied Jones to a one man show-up at Purvey Pointer's hospital room. In the presence of Schmeidel, police asked Purvey if Jones was the man who had struck Purvey and his sister over the head. In response to this question, Purvey stated, "No, that's not the man, that's not the man, no, no, no." (Complaint ¶ 28). Plaintiffs allege that, despite this unequivocal response, police continued to prompt and encourage Purvey to change his answer and to identify Jones as the perpetrator of the crimes. Finally Purvey amended his answer to "yes, no, yes, no." (Complaint ¶ 29).

Based upon this allegedly improper identification, police charged Jones with murder, rape and aggravated battery. Jones was confined to Cook County Jail where he remained for over one month until his family was able to raise and post bond. During the pre-trial proceedings and the trial itself, plaintiffs claim that defendants suppressed much exculpatory evidence, provided the court with false police reports and falsely testified under oath. Plaintiffs also allege that during the trial it was revealed that defendant Furlong of the Chicago Police Department Crime Lab withheld the results of lab tests favorable to Jones. (Complaint ¶ 39).

Plaintiffs allege that as a result of the illegal behavior of the police and prosecutors, the case against Jones ultimately resulted in a mistrial. The government subsequently decided not to prosecute Jones any further. Jones then brought this civil rights action against the City, County and others involved in his allegedly illegal arrest and prosecution. Jones' five count complaint charges false arrest, false imprisonment, malicious prosecution, denial of his right to due process, equal protection and right to counsel, and conspiracy claims.

## MOTION TO DISQUALIFY COUNSEL

The City moved to disqualify plaintiffs' attorneys Schmeidel and Haas, their law firm, known as the People's Law Office, and all partners and associates of that firm, including Flint Taylor, a firm partner who is currently representing plaintiffs. The City contends that attorney Schmeidel is an eyewitness to one of the crucial and certain to be contested elements of plaintiffs' case, the allegedly illegal show-up and coercive questioning of Purvey Pointer in Pointer's hospital room on May 12, 1981. The City also points out that attorney Haas, while defending Jones against the criminal charges in state court, had two conversations with defendant Furlong, a police department lab technician, regarding lab tests of physical evidence. Since the complaint alleges that Furlong suppressed the results of these lab tests and falsely testified or suborned false testimony regarding the suppression of these tests, the City contends that Haas ought to be a witness regarding his conversations with defendant Furlong.

In addition, the City points to another reason indicating that plaintiffs' attorney Schmeidel should testify for Jones. The plaintiffs' attorneys are currently prosecuting a *Monell* policy and practice claim against the City, *Palmer v. City of Chicago*, No. 82 C 2349. Plaintiffs unsuccessfully tried to have the *Palmer* case related to the *Jones* case, stating that the *Monell* policies, practices and customs claim and the malicious prosecution claim of *Palmer* are factually and legally similar to those same claims as raised in *Jones*. In *Palmer*, attorney Schmeidel testified as a witness to the *Monell* policy claims and the

malicious prosecution claim. The City suggests that, since the same issues that Schmeidel testified to in *Palmer* are now raised again in *Jones*, Schmeidel ought to testify to these same issues in *Jones*. The City argues that because Schmeidel and Haas are witnesses to all of the foregoing events, they are barred from also acting as attorneys in the case under the advocate-witness rule. The rule generally prohibits a lawyer from appearing as a witness and advocate in the same proceeding.

In ruling on the City's motion to disqualify this Court held a hearing on June 6, 1984 to insure that a sufficient factual inquiry allowing for subsequent appellate review was conducted. *Fullmer v. Harper*, 517 F.2d 20 (10th Cir.1975); *Analytica v. NPD Research, Inc.*, 708 F.2d 1263, 1275 (7th Cir.) (Coffey, J., dissenting). The Court reviewed the pleadings and heard opening statements by counsel for the parties, the testimony of witnesses, the final arguments of counsel, and considered all of the evidence and law presented, including the exhibits received in evidence and the Court's extensive hearing notes, as well as researched the law applicable to the case. Flint Taylor, plaintiffs' current attorney was present on behalf of the plaintiffs. Robert Fioretti, Assistant Corporation Counsel and Jon Simon were present on behalf of the City. James Houtsma, a Chicago police officer was also present. The attorneys stipulated that all statements made by them were made as under oath in their role as officers of the court. The attorneys also agreed that all information contained in their pleadings was similarly made as if under oath, in affidavit form. The Court hereby makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. In addition to George Jones and Purvey Pointer, the following persons were present on May 12, 1981 when George Jones was brought to an identification show-up at Purvey Pointer's hospital room: Police officer Houtsma, attorney Schmeidel, two unidentified nurses, Sister Maureen, a chaplain with the children's hospital and States' Attorneys Brian Schultz and Kevin Moore. Brian Schultz conducted the show-up and Kevin Moore stood in the hall outside the hospital room or in the doorway of Pointer's room. Officer Houtsma and Brian Schultz will testify that Purvey Pointer conclusively identified George Jones as the person who killed his sister. Purvey Pointer testified in the criminal case against Jones that Jones was the person who killed his sister. Sister Maureen presently resides in Australia. There is no record identifying the two nurses present at the show-up as hospital employees and it is believed that they were interns.

2. It was agreed at the hearing that the City would file with this Court a portion of the transcript in *Palmer v. City of Chicago*, 82 C 2349, which related to conversations between lab technician Furlong and attorney Haas. After examining the transcript, this Court finds that Furlong testified in *Palmer* about procedures for opening a file, maintaining notes and making reports when evidence is received and examined by the Chicago Police Department Crime Lab. She also testified about two tests she made upon evidence submitted in conjunction with Shelia Pointer's rape and murder and reports made in connection with these notes. She testified that she had a conversation with attorney Haas in November, 1981 regarding one of the tests she had performed and that Haas requested that she write a report about the test. She further testified that in response to Haas' request, she supplied a report to the state's attorney's office and told Haas she had done so. She testified she later had several conversations with attorney Haas regarding tests made in connection with the Pointer case. In one of those conversations, in December, 1981, Haas indicated that he had not received a copy of the report. In response, Furlong told Haas to ask the state's attorney if the state's attorney had received the report and if not, she would send additional copies. She testified

that she never concealed or attempted to conceal any information from Mr. Haas.

Attorney Haas does not dispute the substance of his conversations with Furlong, and, in fact, agrees with Furlong's testimony regarding those conversations. (Affidavit of Jeffrey Haas In Support of Plaintiffs' Opposition to the City Defendants' Motion to Disqualify).

3. Plaintiffs' counsel admits that proving plaintiffs' allegation that police improperly prompted and encouraged Purvey Pointer to identify Jones as the perpetrator of the crimes at the show-up is an "important" issue in the trial.

4. If plaintiffs' counsel can prove the allegations regarding the show-up identification, plaintiffs' counsel will not necessarily call Schmeidel to testify regarding the show-up.

5. Attorney Schmeidel is a law partner of Taylor and Haas and will share in any fees earned in this case.

6. Attorney Taylor replaced attorney Schmeidel as one of plaintiffs' attorneys. (Affidavits of George A. Jones and George A. Jones, Sr.). Attorney Haas and Attorney Taylor are currently handling plaintiffs' case for plaintiffs. (Affidavits of George A. Jones and George A. Jones, Sr.).

7. Plaintiffs have been told about the city's motion to disqualify plaintiffs' attorneys, yet nonetheless desire attorneys Haas and Taylor to continue to represent them in this case. (Affidavits of George A. Jones and George A. Jones, Sr.)

8. Schmeidel testified in *Palmer* regarding *Monell* claims similar to the claims raised in the instant case. Some of the testimony was routine and some of the testimony related to the Jones' identification show-up in Purvey Pointer's hospital room.

## CONCLUSIONS OF LAW

### *Disqualification of Testifying Attorney*

With these facts in mind, this Court now turns to the ethical considerations governing this case. Those ethical considera-

tions are contained in the American Bar Association's ("ABA") Code of Professional Responsibility ("Code"), which is composed of Canons and Disciplinary Rule ("DR") and Ethical Considerations ("EC"). Although the Code does not set guidelines for the professional conduct of attorneys appearing before the federal bar, *International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1293 (2d Cir.1975), application of the Code is part of the court's general supervisory authority to insure fairness to all who bring their cause to the judiciary for resolution. *See United States v. Springer*, 460 F.2d 1344, 1354 (7th Cir.), *cert. denied*, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972).

In addition to the Code, this Court also looks to the recently enacted ABA Model Rules of Professional Conduct ("Rules"), effective August, 1983. Although the Rules replace the Code, this Court has looked to both the Code and Rules in ruling on the motion to disqualify. The relevant case law governing disqualification under the advocate-witness rule was evolved by courts interpreting and applying the former Code. Moreover, applicable provisions of the Code are quite similar to the Rules insofar as disqualification of the testifying attorney is concerned. The Rules do depart from the Code's provision requiring disqualification of the testifying attorney's entire firm. Instead, the Rules allow members of the testifying lawyer's firm to act as counsel in the same case. This difference will be discussed later in this opinion in a section dealing with the issue of disqualification of Schmeidel and Haas' entire firm.

The applicable provisions of the Code and Rules provide:

### *Code*

DR 5–102 Withdrawal as Counsel When the Lawyer Becomes a Witness

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his

client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).[1]

### Rules
### RULE 3.7  LAWYER AS WITNESS

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

**1.** The Illinois Code of Professional Responsibility, effective August 1, 1981, parallels the 1980 ABA Code and still calls for the disqualification of an entire firm if a firm member ought to be a witness. *See* Rule 5–102 of the Illinois Code of Professional Responsibility.

**2.** Ethical Considerations 5–9 and 5–10, which provide aspirational goals for the profession also shed light on the advocate-witness dilemma:

EC 5–9  Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

EC 5–10  Problems incident to the lawyer-witness relationship arise at different stages;

The essential inquiry under the Code's DR 5–102(A) is whether an attorney ought to be called as a witness.[2]  Under newly enacted Rule 3.7, the inquiry is whether the lawyer "is likely to be a necessary witness." Although research has uncovered no cases interpreting the standard set forth in Rule 3.7, its language is quite similar to the standard described in DR 5–102(A) of the Code. In fact, a literal interpretation of the two standards would indicate that the "ought to be called as a witness" language of the Code implies a more stringent standard than the "likely to be a necessary witness" language of the Rule. Because the Code standard is arguably more stringent than the Rule and because the standards of each are very similar, this Court has applied cases interpreting the Code to the issue of Schmeidel and Haas' disqualification as it finds the standard of the Code sufficiently analogous to the standard described in Rule 3.7.

Turning to the Code's standard, the circumstances under which an attorney "ought to be a witness" has been variously described by the courts. In *Cossette v.*

they relate either to whether a lawyer should accept employment or should withdraw from employment. Regardless of when the problem arises, his decision is to be governed by the same basic considerations. It is not objectionable for a lawyer who is a potential witness to be an advocate if it is likely that he will be called as a witness because his testimony would be merely cumulative or if his testimony will relate only to an uncontested issue. In the exceptional situation where it will be manifestly unfair to the client for the lawyer to refuse employment or to withdraw when he will likely be a witness on a contested issue, he may serve as advocate even though he may be a witness. In making such decision, he should determine the personal or financial sacrifice of the client that may result from his refusal of employment or withdrawal therefrom, the materiality of his testimony, and the effectiveness of his representation in view of his personal involvement. In weighing these factors, it should be clear that refusal or withdrawal will impose an unreasonable hardship upon the client before the lawyer accepts or continues the employment. Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate.

*Country Style Donuts, Inc.,* 647 F.2d 526, 530–31 (5th Cir.1981), the court stated that the standard was satisfied upon a showing that the client's counsel are aware of facts making it "obligatory to place themselves on the witness stand in order to advance the [client's] case completely and zealously." In the same vein, the Third Circuit has stated that a lawyer ought to testify on behalf of his client when the lawyer "has crucial information in his possession which must be developed." *Universal Athletic Sales Co. v. American Gym, Recreational & Athlete Equipment Corp.,* 546 F.2d 530, 538–39 n. 21 (3d Cir.1976), *cert. denied,* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977). Similarly, in *General Mills Supply Co. v. SCA Services, Inc.,* 697 F.2d 704, 708 (6th Cir.1982), the court recognized that a lawyer "ought" to testify if the lawyer's testimony is "essential to the case." Again, in *Bank of America v. Saville,* 416 F.2d 265, 272 (7th Cir.1969), *cert. denied,* 396 U.S. 1038, 90 S.Ct. 685, 24 L.Ed.2d 682 (1970), the Seventh Circuit noted that an attorney should avoid participation in a case as an attorney where under the circumstances it is "foreseeable" that he or she will testify.

■ The rule forbidding the lawyer to act as an advocate and witness in the same proceeding promotes several important considerations. The most important consideration is that the attorney-witness may not be a fully objective witness, *United States v. Morris,* 714 F.2d 669 (7th Cir.1983), or may be perceived by the trier of distorting the truth for the sake of his client. *Id.* Such a result is obviously harmful and unfair to the client and harmful to the client's cause. *International Electronic Corp. v. Flanzer,* 527 F.2d 1288 (2d Cir.1975). The danger also exists that the trier may confuse the roles of the attorney as witness and attorney as advocate. *Morris,* 714 F.2d at 671–72. If the trier, especially a jury, grants undue weight to the attorney's testimony, the opponent of the attorney witness may be unfairly disadvantaged. *International Electronic Corp.* 527 F.2d at 1294; *see United States v. Johnson,* 690 F.2d 638, 644 (7th Cir.1982). An attorney-wit-ness will also be in a position to vouch for his own credibility in summing up to the jury. This possibility is also unfair to the opponent. Finally, the rule reflects the broader concern for public confidence in the administration of justice, that "justice must satisfy the appearance of justice." *United States v. Johnson,* 690 F.2d 638 (7th Cir.1982); *General Motors Corp. v. City of New York,* 501 F.2d 639, 649 (2d Cir.1974).

■ These reasons, which underlie the advocate-witness prohibition, must be applied in ruling upon the disqualification of Schmeidel and Haas. *United States v. Morris,* 714 F.2d 669 (7th Cir.1983). As the Seventh Circuit noted in *Morris,* the district court should

> examine the goals sought to be served by the rule against such dual appearances and determine whether the particular situation confronting the court requires that the testifying attorney withdraw as counsel.

*Id.* at 671. Measuring the circumstances of the instant case against the goals of the advocate witness rule, this Court concludes that plaintiffs' attorney Schmeidel must be disqualified from participating in the conduct of this litigation.

The facts and circumstances surrounding the allegedly improper and coercive show-up at Purvey Pointer's hospital room indicates that attorney Schmeidel should testify as an eye-witness to this event. To the objective legal observer, Schmeidel's testimony will no doubt be crucial to advance plaintiffs' claims completely and zealously. Detective Houtsma will testify that Pointer conclusively identified Jones as the person who killed his sister. Pointer testified at Jones' criminal trial that Jones was the person who killed his sister, and there is no reason to find that he will not similarly testify in this case. The only witness supporting plaintiffs' position that police coerced Pointer to change his identification will be the plaintiff himself. There is scant reason to find that any other witnesses will support Jones' version of the show-up. It

is more than likely that state's attorneys Schultz and Moore will corroborate Houtsma's and Pointer's testimony, not Jones' testimony. Since there is no record identifying the two nurses who were also witnesses as hospital employees, their testimony, even if favorable to Jones, may not be readily available. Likewise, Sister Maureen's testimony, even if favorable to Jones, may be difficult to obtain in view of the fact that she presently resides in Australia. But even assuming that the presently unidentified nurses and Sister Maureen were available and testified on behalf of Jones, attorney Schmeidel's testimony would still be necessary to rebut four very impressive defense witnesses, Houtsma, Pointer, Schultz and Moore.

In fact, in very similar circumstances the Sixth Circuit recently disqualified an attorney who could testify as to a conversation the attorney had which formed the basis for his client's claim for abuse of process. In *General Mills Supply Co. v. SCA Services, Inc.*, 697 F.2d 704 (6th Cir.1983), the court determined that it was unlikely that the testifying attorney's adversary would confirm the testifying attorney's account of the conversations. Although the testifying attorney claimed that he might get admissions and prove the substance of the conversations by other means, he could not stipulate that he would not testify. Under such circumstances the court found that an independent attorney would not feel safe in submitting the case to the trier without the attorney's testimony.

The testimony of Schmeidel in the instant case is similarly required, like the testimony of the disqualified attorney in *General Mills*. Even attorney Taylor, Schmeidel's partner, recognizes that proving plaintiffs' allegations that police improperly promoted and encouraged Pointer to identify Jones as the perpetrator of the crimes is "important" to the plaintiffs' case. Moreover, a disinterested lawyer would certainly want Schmeidel's testimony to support Jones' claim of false arrest, false imprisonment, malicious prosecution, denial of due process and conspiracy claims. On balance, this Court finds that Schmeidel's testimony is essential to his clients' case. Under such circumstances, Schmeidel "ought" to testify.

■ Although this Court finds that the necessity for Schmeidel's testimony about the hospital room show-up is a sufficient reason to disqualify Schmeidel, the Court also addresses the city's other claimed bases for disqualification for purposes of appellate review. Turning to the city's claim that attorney Haas ought to testify to his conversations with Furlong, wherein he requested reports of lab tests, this Court finds that the substance of their conversations are not in dispute. Although there is a dispute about why Furlong failed to include certain test information in certain reports, the substance of the Haas-Furlong conversations is not disputed. The gist of the dispute is what inference can be drawn from the conversations between Haas and Furlong which would be probative of whether Furlong suppressed the reports. This Court cannot foresee any reason why Haas would have to testify as to the substance of an undisputed conversation and therefore finds that the Haas-Furlong conversations afford no basis to disqualify Haas.

■ The City's final claim, that Schmeidel should testify in support of his *Monell* claims, as he did in *Palmer*, does, however, militate in favor of his disqualification. Some of Schmeidel's *Monell* testimony in *Palmer* related to the hospital room show-up of Jones. Although the amount of Schmeidel's testimony relating to the show-up is not clear, some of the *Monell* claim testimony did relate to the show-up. Since Schmeidel was an eye-witness to that show-up, his testimony ought to be offered in support of plaintiff's *Monell* claim. This factor also supports disqualification of Schmeidel.

### Disqualification of Testifying Attorney's Firm

■ Next, this Court turns to the more difficult question of whether disqualification of attorney Schmeidel also requires

disqualification of his partners, Taylor and Haas, and other partners and associates of their firm. Under former DR 5–102(A), disqualification of an attorney required disqualification of the attorney's entire firm. The former rule required that once a lawyer learns that he "or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw … *and his firm, if any, shall not continue the representation.*" (emphasis added). Under the new ABA Model Rules of Professional Conduct, however, "a lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9" Rule 3.7. Neither of the parties in the instant case have discussed the application of the new Model Rules in their briefs, or alluded to the change regarding firm disqualification under the advocate-witness rule. Nonetheless, this Court has considered the new Model Rule 3.7 as well as former Code provision DR 5–102(A). This Court notes, however, that the ethical rules for attorneys developed by the ABA need not be literally applied by federal courts in every case. *J.P. Foley & Co. v. Vanderbilt*, 523 F.2d 1357 (2d Cir.1975) (Gurfein, J., concurring). Rather, ethical rules serve as guidelines to the federal courts in protecting the judicial process. *Id.; see International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1293 (2d Cir.1975); *Norman Norrell, Inc. v. Federated Department Stores*, 450 F.Supp. 127, 130–31 (S.D.N.Y.1978).

Notwithstanding the change in the new Rules, permitting members of the testifying attorney's firm to act as advocates in the same lawsuit, this Court finds that participation of Schmeidel's firm at trial is not proper under the circumstances of the instant case. Cases developed under the former Code and current commentary dealing with the issue of firm disqualification convince this Court that the judicial process itself would be tainted by allowing the testifying lawyer's firm to act as trial counsel under the circumstances of this case.

■ In the first place, the same reasons which support disqualification of the testifying attorney also support disqualification of the testifying attorney's entire firm. *See generally* 5 A.L.R. 4th 562 § 3[a] (1981 & Supp.1983). Courts have simply recognized to the extent the client's case is proffered through the advocate-attorney's partner or associate, the advocate partner must indelicately argue their partner's credibility. *MacArthur v. Bank of New York*, 524 F.Supp. 486 (S.D.N.Y.1981); *Sheldon v. Blackhawk Heating & Plumbing*, 423 F.Supp. 486 (S.D.N.Y.1976). Moreover, the testifying lawyer's credibility is still impaired since the opposing side can argue that the testifying lawyer still maintains a stake in the litigation. *Comden v. Superior Court*, 20 Cal.3d 906, 576 P.2d 971, 145 Cal.Rptr. 9 (1978); *see also Eurocom, S.A. v. Mahoney, Cohen & Co.*, 522 F.Supp. 1179 (S.D.N.Y.1981).

In cases where courts have refused to extend disqualification to an entire firm, unique circumstances, not present here, were found to exist. In *International Electronics v. Flanzer*, 527 F.2d 1288 (2d Cir.1975), for example, the court did not extend disqualification to the testifying lawyer's entire firm because the testifying lawyer was no longer a member of the firm representing one of the parties in the case. The testifying lawyer had retired from the firm and the practice of law. In such circumstances, the court found DR 5–101(B) and DR 5–102 inapplicable.

■ Similarly, in *Greenbaum-Mountain Mortgage Co. v. Pioneer National Title Insurance Co.*, 421 F.Supp. 1348 (D.Colo.1976), relied on by plaintiffs, the court's refusal to disqualify the testifying lawyer's firm was based, in large part, on unique facts and circumstances. The motion to disqualify was filed more than 14 months after the complaint was filed as an alternative by the defendant in the event its motion for summary judgment was denied. As the court noted in reaching its decision, "the timing of the motion hardly speaks for its *bona fides.*" *Id.* at 1394. (emphasis in original). The filing of the

motion near time of trial indicated it was being used as a trial tactic. Moreover, the court recognized that costs had piled up during the long period between the filing of the complaint and the motion to disqualify. In these unique circumstances, the court refused to disqualify the entire firm. However, the court did recognize that disqualification of an entire firm would be appropriate where the trial could not be conducted in fairness to all absent disqualification. *See also Wayland v. Shore Lobster & Shrimp Corp.*, 537 F.Supp. 1220 (S.D.N.Y.1982) (denying motion to disqualify where no disputed issue which attorney ought to testify to); *Zions First National Bank v. United Health Clubs*, 505 F.Supp. 138 (E.D.Pa.1981) (no specific allegations as to what lawyer should testify to).[3]

█ In the instant case, however, unique circumstances are not present. The motion to disqualify has been brought at an early stage in this litigation before substantial discovery has taken place. Moreover, as previously noted, Schmeidel's testimony regarding the show-up will be essential to establish many of his clients' claims. Obviously, Schmeidel's credibility will be important. If Schmeidel's firm and associates act as trial counsel, Schmeidel's partners will have to argue his credibility to the jury. As his partners and associates, their efforts may be discounted by the trier, to the detriment of their client's case. In addition, the jury may discount Schmeidel's testimony because he will share in any fees which his partners may earn on the case.

Turning to cases under new Model Rule 3.7, the cases are few and not definitive. This Court's research has revealed only one appellate court which has addressed the new Rule. In *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704 (6th Cir. 1982), the court affirmed an order disqualifying an attorney whose testimony was necessary to his client's case. The court expressed no opinion regarding participation of the disqualified attorney's partners or associates since the issue was not properly before it. In a separate opinion, Judge Engel, concurring in part and dissenting in part, noted that then proposed Rule 3.7(b), unlike former DR 5–102(A), allowed other lawyers in the disqualified lawyer's firm to act as advocates in the case. Judge Engel noted that:

> While not as yet adopted, the proposed rules offer some important guidance as to how courts may handle such issues in the future. The changes in rule 3.7 appear, in my opinion at least, to be consistent with a greater recognition of the importance of the client's own judgment concerning his choice of counsel to represent him.

*Id.* at 717 n. 1. In the same vein, in *Freschi v. Grand Coal Venture*, 564 F.Supp. 414, 417 n. 2 (S.D.N.Y.1983), the court noted that Rule 3.7 narrows the scope of DR 5–102(A) since it does not require disqualification of an advocate whose associate appears as a witness in the absence of a conflict of interest.[4]

---

**3.** This Court finds that *Freeman v. Kulicke & Soffa Industries, Inc.*, 449 F.Supp. 974 (E.D.Pa. 1978), and *Zions First National Bank v. United Health Clubs*, 505 F.Supp. 138 (E.D.Pa.1981), also relied on by plaintiffs, are not controlling. Plaintiffs confuse the different standards applied by courts under DR 5–102(A) (where a lawyer ought to be called *on behalf* of the client) and DR 5–102(B) where a lawyer learns he may be called as a witness *other than on behalf* of his client. *Zions* found that unsupported allegations of prejudice cannot support a motion to disqualify under DR 5–102(A).

*Freeman* dealt with DR 5–102(B) which calls for disqualification where a lawyer may be called as a witness other than on behalf of his client. In such circumstances, the movant must make a showing that the testimony of the law-

yer may prejudice the testifying lawyer's own clients. If the testimony may be prejudicial, the testifying lawyer's firm may be disqualified for fear that the testifying lawyer's partners may not adequately attack their partner's credibility. A finding of prejudice to the client under DR 5–102(B) is more stringent than under DR 5–102(A) since a litigant obviously may call his or her opponent's lawyer as trial tactic to seek to disqualify the lawyer from the case.

**4.** Determining whether a conflict of interest exists is done by reference to Rules 1.7 and 1.9. Explaining possible conflicts, the Comment to Rule 3.7 poses as an example the case where the testimony of the client and the lawyer are likely to conflict substantially. Rules 1.7 and 1.9 do not address possible conflict problems where a

■ Whether or not Rule 3.7's change was intended to afford deference to the client's judgment, this Court finds that the client's judgment is not properly the controlling factor. Although the client's wishes may be considered, the client will almost always be reluctant to forego the assistance of familar counsel or to incur the expense and inconvenience of retaining another lawyer. *J.P. Foley & Co. v. Vanderbilt*, 523 F.2d 1357, 1359 (2d Cir.1975); *Brotherhood Railway Carmen v. DelPro Co.*, 549 F.Supp. 780 (D.Del.1982). Moreover, the client will generally be guided in the decision to retain the testifying attorney's firm by the testifying attorney and his or her firm, the same firm whose continued representation is in issue. *See Brotherhood Railway Carmen* at 789; *MacArthur v. Bank of New York*, 524 F.Supp. 1205, 1209 (S.D.N.Y.1981).

■ In the same vein, the client's wishes and any hardship that may be imposed upon the client by disqualification, must be viewed in light of the time that the issue of potential disqualification becomes apparent. As many courts have noted, substantial hardship to the client speaks to the situation where the potential for disqualification was not known to the parties in advance. *E.g., General Mill Supply Co. v. S.C.A. Services, Inc.*, 697 F.2d 704, 714 (6th Cir.1982). Where the lawyer and client know, or should know, that the lawyer may be an indispensable witness in a potential suit they cannot continue, by their joint actions, to enlarge the dependence of the client upon the lawyer and thus increase the hardship to the client when the lawyer and his law firm may be disqualified.[5] Hardship to the client because of the client's dependence upon the lawyer means hardship that the parties could not rationally foresee. *Id.* at 715. Moreover, hardship is ameliorated since the disqualified lawyer and his firm may help new counsel if the client so desires.[6] In addition, courts have generally rejected arguments that a lawyer's long-standing relationship with a client, involvement with the litigation from its inception or financial hardship to the client are sufficient reasons to invoke the "substantial hardship" exception to the advocate-witness rule. *May's Family Centers v. Goodman's Inc.*, 590 F.Supp. 1163 (N.D.Ill.1984).

■ The instant case is unlike cases where courts have found hardship to the client controlling, for example, the situation where a lawyer and law firm continually draft contracts for a client in the course of the client's business and then are suddenly needed to testify for the client about the intent of the parties regarding a provision of the contract. Rather, the instant case is one where the parties knew, from the day of the allegedly improper hospital show-up, that Schmeidel might be required to testify to this event in any ensuing civil rights claim. Even if the existence of a civil rights claim did not become apparent until the alleged suppression of evidence occurred during Jones' trial, the parties still had adequate time to foresee the potential necessity for Schmeidel's testimony.

---

testifying lawyer's law firm desires to remain in the case.

**5.** The American Bar Foundation's Annotated Code of Professional Responsibility 208 n. 12 (1979), also notes that unfairness to the client because of the attorney's withdrawal must be judged in light of the time at which it became apparent that the attorney should testify:

It is the general rule that a lawyer may not testify in litigation in which he is an advocate unless circumstances arise which could not be anticipated and if [the lawyer's continued representation] is necessary to prevent a miscarriage of justice. . . .

ABA Comm. on Professional Ethics and Professional Responsibility, Formal Opinion 339 (1974) also notes that an exceptional circumstance warranting continued representation would occur where a complex suit has been in preparation over a long period of time "and a development which could not be anticipated" makes the lawyer's testimony essential.

**6.** Where an attorney is disqualified under the advocate-witness rule, neither the language or the spirit of the advocate-witness rule preclude payment of a reasonable compensation for services already performed. American Bar Foundation, Annotated Code of Professional Responsibility 221 (1979).

Finally, the ultimate and continuing justification for the advocate witness rule, preservation of the integrity of the judicial process, requires disqualification of Schmeidel and his firm from the trial of this case. The cases and commentators have continually recognized that the major purpose behind the advocate-witness rule is to avoid confusion between the role of the advocate and the role of the witness. *E.g.*, *General Mills Supply Co.*, 697 F.2d at 712. The advocate's function is to advance or argue the cause of another, while that of a witness is to state facts objectively. Thus, the advocate speaks, not from what he or she personally believes to be true, but as one who conjures up the best legal arguments in light of the facts presented through witnesses. The strength of the advocate's arguments does not flow from the personal qualities of the advocate, but from the force of its reason. Whether the advocate personally believes in the client's cause is irrelevant. The advocate's argument is not judged by its sincerity but by its logic, its cogency.

The witness, on the other hand, does not seek to develop the best argument, but merely to state facts as objectively recalled. Thus, a witness vouches for the truth of his statements. Unlike the advocate, the witness asserts his personal beliefs, that which he or she personally believes and knows to be so. The force of the witnesses' testimony stems from the witnesses' personal qualities of credibility and integrity.

██ Avoidance of confusion between these two essential functions of our legal system is critical to the proper functioning of that system. *Id.* First, avoidance of role confusion protects the public's interest in the seemly use of judicial resources to a just, speedy, and inexpensive resolution of disputes. Where the lawyer speaks as a witness, the lawyer is likely to forget whether the lawyer speaks as an advocate or witness. Such role confusion will tend to confuse the entire judicial proceeding. In addition, experience has shown that one who serves in both roles is not as helpful to

the court. *Id.* Embitterment between counsel, also detrimental to the process, is likely to occur when one counsel seeks to impeach the credibility of opposing counsel acting as a witness. These difficulties remain even though the testifying lawyer's firm acts as counsel and hinder the effectiveness and seemliness of the entire judicial proceeding.

Turning to the instant case, one cannot imagine two more bitterly opposing foes than the People's Law Clinic and the City of Chicago. As Mr. Taylor's and Mr. Haas' affidavits point out, their law firm has brought numerous civil rights cases against the City. The danger of role confusion in such a case could be especially detrimental to the proper judicial resolution of the instant dispute.

Even those who criticize these traditional justifications for the advocate-witness rule recognize that the rule does serve important systematic interests. In his article, *The Rationale of the Rule That Forbids a Lawyer To Be Advocate and Witness in the Same Case*, Am.B.Research J. 455 (1977), Professor Enker explains that the real difficulty with allowing an attorney to appear as a lawyer and witness in the same proceeding is to preserve the attorney's role as a champion of the client's cause. As Enker views it, the advocate-witness rule attempts to preserve the difference between advocacy, based on reason and subject to evaluation, and testimony, based on the witness' moral qualities. Maintenance of this difference, Enker believes, is essential if the lawyer is to maintain independence from his client while evaluating his cause. If the lawyer were to combine the roles of advocate and witness, the assessment of his integrity and credibility of his testimony would likely affect the evaluation of his argument. "Trial would become a contest over whose lawyer possessed greater credibility rather than which argument was stronger." *Id.* at 464.

Enker reasons that because the lawyer acts as an advocate, and not a witness, he is able to argue either side in a dispute, regardless of his personal beliefs. A law-

yer is not a witness, personally vouching for what he says, but an advocate whose arguments are addressed to reason and stand and fall as they objectively persuade. Enker believes that this objective quality of a lawyer's role, keeping independent of his client, enables the lawyer to represent the criminal, the weak, the socially and politically unpopular—"those elements of society whose protection lies in the demand that reason, rather than force and emotion be a test of their rights." *Id.*

Under Enker's analysis, it is not the protection of the client's interests but the integrity and preservation of the attorney's professional role that bars the advocate witness. As a professional concern, the rule protects systemic interests, not the client's or the adversary's interest. Thus, neither consent of the client nor consent of the opponent should afford a basis for relaxing the rule.

Also, as a protector of systemic interests, Enker argues that the rule should be flexibly administered. Where role confusion is unlikely, one partner should be allowed to act as advocate while a second partner testifies in the same case. Thus, the rule might be relaxed where a law firm represents a client over a long period of time upon numerous business matters, not necessarily related to each other. The concern should be preservation of the separate identity of the roles.

After considering all of the foregoing factors, this Court finds that disqualification of Schmeidel's firm from the trial of this case also serves to avoid role confusion and the many interests such avoidance protects. This Court does not find, however, that disqualification of Schmeidel's firm from all phases of the litigation is required. In view of all the competing interests involved in this motion to disqualify, this Court finds that disqualification of Schmeidel's firm should only be extended to the actual trial of the case. Schmeidel's firm will be allowed to continue as pre-trial counsel and other trial counsel should be obtained to handle the actual trial of the

case. Although the prohibition of the advocate-witness rule has been interpreted to extend to pre-trial discovery, courts have also recognized that the trial judge does retain the discretion to determine to what proceedings the disqualification should apply. *General Mills Supply Co.,* 697 F.2d at 716. As the court aptly noted in *Norman Norell, Inc. v. Federated Department Stores,* 450 F.Supp. 127 (S.D.N.Y. 1978) in confining disqualification to trial only:

> The concerns there expressed [for disqualification] are for the public perception of justice done and probity preserved and for neutralization of any unfair advantage *at trial.* By this standard there can be no cavil if Manning [the disqualified attorney] acts as counsel *prior* to trial but is barred from dual participation *at* trial.

*Id.* at 131. (emphasis in original).

Similarly, in the instant case, the reasons for disqualification of Schmeidel's firm are served if their participation is limited to pre-trial proceedings.

The disqualification of Schmeidel's firm extends only to partners and associates of his firm and does not include non-professional employees or agents of the firm. The trial court's discretion to disqualify an attorney does not extend to non-professional employees or agents of the attorney, *United States v. Nyman,* 649 F.2d 208 (4th Cir.1980), and therefore this order does not encompass non-professional employees or agents of the People's Law Clinic.

## CONCLUSION

Attorney Schmeidel is disqualified from participation in any pre-trial discovery and pre-trial proceedings and from participation in the actual trial of this case. Schmeidel's law partners and associates are disqualified from participating in the actual trial only.