ZURICH INSURANCE COMPANY; Zurich American Companies; and Zurich American Insurance Company (Real Parties in Interest), Appellants,

and

Tom McDonald, Judge, Jefferson Circuit Court, Appellant,

v.

Jackie KNOTTS and Lloyd Knotts, Appellees.

No. 2000–SC–000660–MR.

Supreme Court of Kentucky.

Aug. 23, 2001.

Amended Aug. 29, 2001.

James Douglas Harris, Jr., Lewis, King, Krieg, Waldrop & Caatron, Bowling Green, Robert E. Stopher, Boehl, Stopher & Graves, Louisville, for Appellants.

Larry B. Franklin, Franklin & Hance, PSC, Louisville, Lee E. Sitlinger, Sitlinger, McGlincy, Steiner, Theiler & Karem, Louisville, for Appellees.

GRAVES, Justice.

An attorney who handles a personal injury action is not necessarily disqualified as an advocate in an action for bad faith in the insurance claims process merely because he files a personal affidavit in opposition to a motion for summary judgment. The limited and specialized use of an affidavit by an attorney, who does not testify at trial for his clients, provides an insufficient justification to allow opposing counsel to deprive a party of its right to counsel of its choice. Being hearsay, affidavits are generally inadmissable in evidence; however, where the judge is the trier of fact, affidavits serve the important purpose of being a ready and economical vehicle to expedite the disposition of motions for summary judgment. The use of an affidavit in opposition to a motion for summary judgment does not make the affiant a likely necessary witness absent a showing that the information contained therein is unobtainable from other sources.

Appellee, Lloyd Knotts, has brought this bad faith action based on the handling of an insurance claim for personal injuries resulting from an accident on November 10, 1992. Knotts was working as a business invitee at the Lawson Mardon Flexible Packaging Company, Inc. ("Lawson Mardon")[1] when he was injured in a thirty-foot fall to a concrete floor. Lawson Mardon was insured by Appellant/Real Party in Interest, Zurich Insurance Company ("Zurich"). Shortly after the accident, Knotts and his wife, Jackie, hired Attorney Larry Franklin to represent them in the personal injury action. Throughout the litigation, Franklin handled all settlement negotiations. Following a trial in August 1994, the jury awarded total damages in the amount of $1,202,104.29.

In August 1997, the Knottses filed a bad faith action against Lawson Mardon[2] and

---

1. At the time of the accident, Lawson Mardon was named Alusuisse Flexible Packaging, Inc.

2. Lawson Mardon obtained summary judgment in its favor which was affirmed by the

Zurich, alleging that both had violated the Unfair Claims Settlement Practices Act (UCSPA) and the Consumer Protection Act (CPA). The Knottses were again represented by Franklin, however, attorney Lee Sitlinger was also retained as co-counsel. In their complaint, the Knottses alleged that Zurich acted in bad faith by: (1) failing to acknowledge and act reasonably promptly upon communications; (2) failing to adopt and implement reasonable standards for investigations; (3) refusing to pay claims without conducting reasonable investigations; and (4) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability is reasonably clear. *See* KRS 304.12–230(2), (3), (4), and (6).

While the case was pending in federal court, Zurich filed a motion for summary judgment. In response, Attorney Franklin filed a personal affidavit referring to his settlement negotiations with Zurich and its representatives. In the affidavit, Franklin stated that there were genuine issues of material fact within his personal knowledge, as a result of his acting as the primary negotiator for the Knottses.

Shortly thereafter, Zurich filed a motion to disqualify Franklin on the grounds that he made himself a necessary witness by filing his personal affidavit with the response to motion for summary judgment. Zurich pointed out that the Knottses had already deposed several of the defense attorneys who participated in the underlying case, and stated that it intended to depose Franklin regarding his knowledge of the settlement negotiations. The Knottses responded that Franklin was not, in fact, a necessary witness and that they had no intention of calling him at trial. Nonetheless, the trial court granted Zurich's mo-

tion to disqualify Franklin, concluding that he was a necessary witness and that his participation as both an advocate and witness would violate SCR 3.130, Rule 3.7.

The Knotts thereafter sought a writ of mandamus in the Court of Appeals to compel Judge Tom McDonald to withdraw his order of disqualification. In a 2–1 decision, the Court of Appeals granted CR 76.36 relief. The court concluded that Franklin's disqualification would cause the Knottses irreparable harm by depriving them of "counsel of their choice who 'has the unique knowledge and familiarity with the underlying facts in that action to better represent [them] . . . .'." The court also opined that the order of disqualification was prematurely based on "a mere assumption that Zurich will choose to call him as a witness at trial because he has 'material knowledge concerning Zurich's conduct during the settlement negotiations and trial of the underlying tort case' and because Zurich intends to depose him." Accordingly, the Court of Appeals directed the trial court to vacate the order of disqualification. Zurich thereafter appealed to this Court.

Zurich argues that Kentucky courts have repeatedly held that "when a lawyer is a witness for his client, except as to merely formal matters, . . . he should leave the trial of the case to other counsel." *Morrison's Administrator v. Redmon*, Ky., 287 S.W.2d 167, 168 (1956). Indeed, this long-standing principle is espoused in Rule 3.7 of the Kentucky Rules of Professional Conduct (Supreme Court Rule 3.130):

> (a) A lawyer shall not act as an advocate at trial in which the lawyer is likely to be a necessary witness except where:

Court of Appeals. Discretionary review was not sought. Thus, Lawson Mardon is not a party to this appeal.

(1) The testimony relates to an uncontested issue;

(2) The testimony relates to the nature and value of legal services rendered in the case; or

(3) Disqualification of the lawyer would work a substantial hardship on the client.

Rule 3.7 is an ethical rule without an evidentiary counterpart. Courts routinely decide evidentiary questions and usually leave ethical matters to the bar.

The commentary to the Rule 3.7 explains that the party's right to choice of counsel must be weighed against the unfair prejudice created when that attorney testifies:

[A] balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client.

SCR 3.130–3.7, Comment (4). The drafters were concerned primarily with the prejudice that could potentially befall the opposing counsel when an attorney testifies on behalf of his clients. In fact, Comment 2 notes that a major source of prejudice is the likelihood that the jury will confuse the attorney as a witness with the attorney as an advocate.

Similarly, the *Annotated Model Rules of Professional Conduct*, Rule 3.7, p. 356 (ABA 3rd ed.1996) provides:

The rule that a lawyer should not combine the roles of witness and advocate is designed to avoid public perception that the lawyer as witness is distorting the truth for the sake of a client or enhancing his or her own credibility as an advocate by taking an oath as a witness, and to spare opposing counsel the unfair and difficult task of cross-examining an adversary and impeaching the adversary's credibility. *See In re Am. Cable Publications, Inc.*, 768 F.2d 1194 (10th Cir.1985) (concluding that Rule designed primarily for situations in which lawyer acts simultaneously as counsel and witness, or in which trial counsel's partner is nonparty witness); *Jones v. City of Chicago*, 610 F.Supp. 350, 362 (N.D.Ill. 1984) (major purpose behind advocate-witness rule is to avoid confusion between role of advocate and role of witness).

■ Since Kentucky Appellate Courts have not interpreted Rule 3.7, Zurich relies on several cases from other jurisdictions interpreting rules similar to Rule 3.7, in support of its argument that disqualification of Franklin is warranted. *155 North High, Limited v. Cincinnati Insurance Co.*, 72 Ohio St.3d 423, 650 N.E.2d 869 (1995), was a bad-faith action which arose out of a property-damage claim brought by 155 North High against Cincinnati Insurance Company. The attorney for 155 North High, James Wiles, conducted all settlement negotiations on his client's behalf up until the time he filed a complaint against Cincinnati Insurance Company alleging bad faith. Prior to trial, Wiles listed himself as a potential witness for his own client and was, in fact, permitted to testify at trial.

In holding that Wiles should have been disqualified, the Ohio Supreme Court relied on Ohio Disciplinary Rule 102(a), which is substantially similar to rule 3.7, and concluded that the rule forbids a lawyer from "serving in the dual role of wit-

ness and advocate ... to protect three distinct interests: those of the client, those of the adverse party, and that of insuring the institutional integrity of the legal system as a whole." *Id.* at 872. The court ultimately held that Wiles should have been disqualified since he was the principal negotiator for 155 North High and his testimony was necessary to prove his client's claims. *Id.* at 873. *155 North High, Limited* is distinguishable because the attorney listed himself as a witness for his own client. Here, it is the opposing party who has designated Franklin as a witness.

Similarly, *Warrilow v. Norrell,* 791 S.W.2d 515 (Tex.App.1989), also involved a bad-faith action in which the attorney in question, Allan King, was designated not only as a witness for his client, but also as an expert witness in the case. In holding that the trial court erred in refusing to disqualify King, the Texas Court of Appeals found that King "was called upon to testify about his strategy and what transpired during the settlement negotiations he personally conducted in the underlying causes of action on behalf of [his client]; his testimony was crucial to prove bad faith on the part of Warrilow." *Id.* at 520. The court commented that a problem associated with this type of testimony is the attorney-witness vouching for his own credibility, which is seemingly unfair to opposing counsel. We do not accept this reasoning because cross-examination by a skilled adversary should be sufficient to test the credibility of any lawyer who is a witness. That is, a witness who is also an advocate is more readily impeachable because of interest in the outcome of the litigation.

The *Warrilow* court noted that disqualification of an attorney sought to be called as a witness for the opposing party is subject to a more stringent standard because "a litigant may call his or her opponent's attorney as a trial tactic, seeking to disqualify the attorney from the case." *Id.* at 521, n. 7[3] (*citing Jones v. City of Chicago, supra*); *see also General Mill Supply Co. v. SCA Services, Inc.,* 697 F.2d 704 (6th Cir.1982). Similarly, in *Gilbert McClure Enterprises v. Burnett,* 735 S.W.2d 309 (Tex.App.1987), the Texas Court of Appeals again held that the mere announcement by an adversary of his intention to call opposing counsel as a witness is insufficient to warrant counsel's disqualification. "There must be a genuine need for the attorney's testimony, which should be material to the movant's case as well as prejudicial to the interests of the attorney's client...." *Id.* at 311. (internal citations omitted); *see also Sargent County Bank v. Wentworth,* 500 N.W.2d 862 (N.D.1993); *Cottonwood Estates, Inc. v. Paradise Builders, Inc.,* 128 Ariz. 99, 624 P.2d 296 (1981).

The crucial inquiry in determining whether an attorney can act as both an advocate and a witness is the prejudicial effect it will have upon the attorneys' own client. Certainly, the opposing party may have a proper objection where the combination of roles would prejudice that party's rights in litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear to a jury whether a statement by an advocate-wit-

---

**3.** Texas Disciplinary Rule 5–102(b) specifically addresses such a situation and provides:
If after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

ness should be taken as proof or as an analysis of the proof. Consequently, balancing is required between the interests of the opposing parties lest the rule be used as a tactical weapon for expense, delay, inconvenience, and sequestration of a witness.

■ Notwithstanding, disqualification is a drastic measure which courts should be hesitant to impose except when absolutely necessary. *See University of Louisville v. Shake,* Ky., 5 S.W.3d 107 (1999). Disqualification separates a party from the counsel of its choice with immediate and measurable effect. Here, attorney Franklin has lived through the previous litigation from its inception and has in his memory, or at his fingertips, knowledge of the case no one else could duplicate. Moreover, regardless of the level of competency of a successor attorney, the degree of confidence and trust that has developed between the Knottses and Franklin cannot be replaced. Franklin has stated that he will not be called to testify on behalf of the Knottses and, in fact, has no information that it is crucial to the Knottses claims against Zurich. We agree with the Court of Appeals that disqualification of Franklin would work a substantial hardship upon the Knottses and would result in irreparable harm.

■ We do not mean to imply that motions to disqualify counsel may not be legitimate, for there obviously are situations where they are both legitimate and necessary. However, the showing of prejudice needed to disqualify opposing counsel must be more stringent than when the attorney is testifying on behalf of his own client, because adverse parties may attempt to call opposing lawyers as witnesses simply to disqualify them. Consequently, Zurich has failed to demonstrate that: (a) Franklin's testimony is important to its proof at trial; (b) there is any probability that Franklin's testimony will conflict with that of other witnesses; and (c) the information contained in Franklin's affidavit is unattainable from other sources. It is Zurich who seeks to call him as a witness. While such is permissible, it does not, and should not, result in Franklin's disqualification.

The Court of Appeals properly found that Appellees demonstrated their entitlement to extraordinary relief. As such, we affirm the issuance of the writ of mandamus.

LAMBERT, C.J., GRAVES, JOHNSTONE, and STUMBO, JJ., concur.

COOPER, J., dissents by separate opinion in which KELLER and WINTERSHEIMER, JJ., join.

COOPER, Justice, dissenting.

Supreme Court Rule 3.130(3.7) provides, *inter alia,* that "[a] lawyer shall not act as advocate at a trial in which the lawyer is *likely* to be a necessary witness except where ... disqualification would work substantial hardship on the client." (Emphasis added.)

This is an appeal from an original action in the Court of Appeals that resulted in the issuance of a writ of prohibition against Appellant Judge McDonald to prevent him from disqualifying attorney Larry Franklin as counsel for Appellees Lloyd and Jackie Knotts in the underlying "bad faith" action brought by the Knottses against Appellant Zurich Insurance Company. The Knottses claim that Zurich violated the Uniform Claims Settlement Practices Act (UCSPA), KRS 304.12–230, during the litigation of a personal injury action brought by the Knottses against Alusuisse Flexible Packing, Inc. In their discovery depositions in the bad faith action, both Mr. and Mrs. Knotts disclaimed any knowledge of any settlement negotia-

tions that did or did not occur during the personal injury action, asserting that they entrusted such matters entirely to their attorney, Larry Franklin.

Q. Do you have a feeling that anything bad was done to you by Zurich before the trial?

A. I really don't know because I wasn't in—I left it up to my attorney.

. . .

Q. Well, let me ask you this. Do you think it was reasonable for Zurich to make you prove your claim?

A. I really don't know anything, any legal things about it. I just left it up to my attorney.

. . .

Q. During the course of the case and before the trial, what did you yourself [do] to try to settle the claim?

A. We left it up to our attorney to handle the total case.

Q. So Mr. Franklin was in charge of the case and Mr. Franklin would have been in charge of trying to settle the case?

A. Yes, sir.

Q. And you left it up to him to handle that?

A. That is correct.

Q. With regard to offers of settlement or attempts at settlement, do you know if any offer made by Mr. Franklin, if any offer, was it a joint offer on behalf of you and Mrs. Knotts or would it have been an offer for you and a separate offer for Mrs. Knotts, if you know?

A. I don't know.

Q. As between you and Mrs. Knotts, who controlled the claim?

A. Our attorney.

. . .

Q. Can you tell me when in time you believe that an offer of settlement should have been made to you by Zurich?

A. I don't know.

Q. Is this again something you would have left up to Mr. Franklin?

A. Yes, sir.

. . .

Q. . . . Are you able to tell me what amount you think should have been offered by Zurich to settle the case?

A. Again, we relied upon Larry Franklin.

Q. Can you tell me what amount you would have accepted in full and complete settlement of your claim?

A. Again, we would have to—I would have just left it up to Larry. I really don't know.

. . .

Q. . . . Are you able to tell me how much money would have satisfied your claim in your mind?

A. No, sir, I can't.

Q. Did Larry Franklin ever tell you how much your case was worth?

MR. SITLINGER: Are you talking about before trial?

Q. Before trial?

A. No, not really.

Q. Did you ever have any discussion with Larry Franklin about what the case was worth?

A. The money—the money wasn't really the major—it wasn't really it. We wanted our bills paid and they refused to do so, and money, we never talked about money.

. . .

Q. Did you ever talk with him about what the case was worth?

A. I don't recall.

Q. Did you ever have, in your own mind, an idea as to what the case was worth?

A. No, sir.

Zurich filed a motion for summary judgment. In response, the Knottses filed the affidavit of attorney Franklin, which included the following:

It was not until the third day of trial that the very first and only offer was made by Zurich. And at that time, they offered the deductible of the policy which was the personal responsibility of the Defendant and nothing from Zurich. This remained the offer throughout the trial. On the last day of trial, Plaintiffs made their final request to settle for $1,000,000.00. There was no response to this. The jury awarded $1,200,000.00.

At a settlement conference held at the appellate level, Zurich requested that the Plaintiffs reduce the verdict by an additional 25%.... When asked what basis that Zurich wanted this additional 25% reduction. (Sic.) They failed to give a reason.

It was quite clear through the trial of this matter that the defense attorney, Bissell Roberts, wanted, very much, to deal in good faith with me, but that his hands were tied and that his recommendations were ignored....

When Zurich American appealed this matter, they asked for a reduction in the amount of interest on the Judgment.... I could only attribute additional harassment and bad faith by Zurich for not paying this working man, who had no other source of income and who was totally precluded from his ability to earn a living and who already had most of his possessions repossessed to then file an appeal. And I also wrote to the appellate attorney that this was just yet another continuing act of bad faith by Zurich.

The letter mentioned in the last sentence was attached to the affidavit and included the following:

I can see no reason for Zurich American's position in this case except, as always, it appears to be just business as usual trying to take an unfair advantage as a result of their relative positions of power in this case with Zurich American being the multinational, all-powerful and wealthy insurance company and Lloyd being just a poor citizen of the state of Kentucky. I really think that their conduct in this case has been the utmost in bad faith and I think by continuing to deny Lloyd the payment of the judgment that he received as a result of the trial that they forced him through is only a further extension of their callous disrespect for the human goodness of the individual and the jury system and the citizens of our state.

On the basis of Franklin's affidavit and attached letter, summary judgment was denied. Because this case began as an original action in the Court of Appeals, we do not have access to the record in the underlying action. However, the Knottses had already retained attorney Lee Sitlinger to represent them in the bad faith action; and if Sitlinger, as lead counsel, prepared and filed the response to the motion for summary judgment that was supported by Franklin's affidavit, then Sitlinger was acting as the Knottses' attorney and Franklin as their chief witness in that phase of the litigation.

Franklin was the attorney who conducted the negotiations that are the gravamen of the Knottses' bad faith claim. The Knottses disclaim any knowledge of any facts supporting their claim and assert that they relied entirely on Franklin to negotiate with Zurich. Franklin's affidavit relates personal knowledge, observations

and opinions that are uniquely known to him and essential to the success of his clients' claim. For that reason, I conclude that Judge McDonald did not err in deciding that Franklin was "likely to be a necessary witness" at trial, thus, should be disqualified as counsel for the Knottses. *Mauze v. Curry*, 861 S.W.2d 869, 870 (Tex. 1993) (attorney should have been disqualified after rendering an expert opinion in an affidavit filed in response to the defendant's motion for summary judgment).

The facts of this case are almost identical to those in *155 North High, Ltd. v. Cincinnati Insurance Co.*, 72 Ohio St.3d 423, 650 N.E.2d 869 (1995), except that the Ohio case was decided in the context of an appeal from an adverse judgment (which was reversed) whereas this case is decided in the context of an appeal from the grant of a pretrial writ.

[W]e find it obvious not only that Wiles's testimony was admissible, but also that it was clear that he "ought to be called as a witness on behalf of his client." Wiles had personal knowledge regarding the alleged acts of bad-faith claims handling. He was an active participant in dealings and negotiations beginning shortly after the fire and continuing up to the time the lawsuit was filed. He testified to conversations and actions taken by the insurance company. Thus, his testimony was necessary to prove his client's claims. Moreover, this was not a sudden development. Wiles had known early on that he was a key witness. This fact is attested to in his affidavit which was attached to appellant's memorandum contra Cincinnati's motion for summary judgment. . . .

*Id.* at 872–73. *See also General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704 (6th Cir.1982).

Nor does Franklin's disqualification fall within the "undue hardship" exception to the rule of disqualification. As noted in *Warrilow v. Norrell*, 791 S.W.2d 515 (Tex. App.1989), "[t]his exception generally contemplates an attorney who has some expertise in a specialized area of the law such as patents, and the burden is on the attorney seeking to continue representation to prove distinctiveness." *Id.* at 520. Intimate familiarity with the case and mere increased expenses do not meet this standard. *155 North High, Ltd., supra*, at 873–74. If bad faith litigation is a specialized area of the law, then Sitlinger, not Franklin, is the presumed specialist, since he was specifically retained to act as lead counsel in the bad faith case against Zurich. (Actually, considering Franklin's reputation as a skilled and successful litigator, it is more probable that Sitlinger was retained as lead counsel because Franklin knew he was "likely to be a necessary witness" and, thus, would be disqualified as counsel at some point during the litigation.)

An unfortunate consequence of the outcome of this appeal may be that Franklin is now precluded from testifying as a witness at trial even if subsequent events indicate that he "ought to be called as a witness on behalf of his client" either to prove the facts as he viewed them or to rebut a contrary version offered by Zurich's witnesses. *155 North High, Ltd., supra*, at 872–73. Nevertheless, the Knottses prefer to have Franklin at counsel table rather than on the witness stand, and the majority of this Court has granted their wish. This case may prove the adage of "be careful what you ask for; you might get it."

Accordingly, I dissent.

KELLER and WINTERSHEIMER, JJ., join this dissenting opinion.