155 NORTH HIGH, LIMITED, APPELLANT, *v.* CINCINNATI
INSURANCE COMPANY, APPELLEE.

[Cite as *155 N. High, Ltd. v. Cincinnati
Ins. Co.* (1995), 72 Ohio St.3d 423.]

(No. 93–2371—Submitted March 22, 1995—Decided July 5, 1995.)

*Wiles, Doucher, Van Buren & Boyle Co., L.P.A., James J. Brudny, Jr.* and *James M. Wiles; Baker & Hostetler* and *Bradley Hummel,* for appellant.

*Lane, Alton & Horst, Gregory D. Rankin* and *Karen Krisher Rosenberg,* for appellee.

FRANCIS E. SWEENEY, SR., J.   A trial court has the duty and responsibility to supervise the conduct of attorneys who appear before it and its rulings will be upheld unless the court abused its discretion. *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 27 OBR 447, 501 N.E.2d 617; *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 31 OBR 459, 510 N.E.2d 379.   Thus, our inquiry in this case is whether the trial court abused its discretion by allowing 155 North High's attorney to serve as both an advocate and witness at trial.[2]   For the following reasons, we find an abuse of discretion and, accordingly, affirm the court of appeals.

At first blush, our job appears more difficult because the referee deferred to the judgment of the attorney and completely abdicated his responsibility to make an independent determination as to whether the Disciplinary Rules were violated. Moreover, without consideration of the record, the trial court then adopted the referee's report and recommendation.   However, on remand, a different trial court reviewed the record and made an independent determination that the Disciplinary Rules were not violated.   It is this ruling that we now review subject to the abuse-of-discretion standard.

The Code of Professional Responsibility sets forth the legal standards relating to the practice of law.   The Code is comprised of three parts: Canons, Ethical Considerations, and Disciplinary Rules.   The Canons are "statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public, with the legal system, and with the legal profession."   Preface.   The Ethical Considerations "are aspirational in character and represent the objectives toward which every member of the profession should strive."   *Id.*   The Disciplinary Rules, however, are "mandatory in character," because they "state the minimum level of conduct below which no lawyer can fall."   *Id.*

Within this framework, Canon 5 provides that, "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client."   In part, this Canon

---

2.   This case does not deal with the issue of an attorney's testimony against his or her client (DR 5-102[B] ).   Courts will closely scrutinize this situation because an adverse party may try to call an opposing lawyer as a witness simply to disqualify that lawyer, thus creating an unfair tactical advantage, or to harass opposing counsel.   *Sargent Cty. Bank v. Wentworth* (N.D.1993), 500 N.W.2d 862.

is enforced by DR 5-102(A), which states the general rule that "[i]f * * * a lawyer learns or it is obvious that he * * * ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and * * * shall not continue the representation in the trial, except that he may continue the representation and he * * * may testify in the circumstances enumerated in DR 5-101(B)(1) through (4)." EC 5-9 provides the rationale for the witness-advocate rule: " * * * The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively." EC 5-10 also declares that "[w]here the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate."

DR 5-102(A), unlike other rules[3] in the Code of Professional Responsibility, makes no provision for client waiver of its application. This is so because the rule against a lawyer serving in the dual role of witness and advocate is designed to protect three distinct interests: those of the client, those of the adverse party, and that of ensuring the institutional integrity of the legal system as a whole. See 6 Wigmore on Evidence (Chadbourn Rev.Ed.1976), Section 19; *United States v. Johnston* (C.A. 7, 1982), 690 F.2d 638, 643. As eloquently stated by the court in *GAC Commercial Corp. v. Mahoney Typographers, Inc.* (1975), 66 Mich.App. 186, 191, 238 N.W.2d 575, 577: "As members of a profession in which public reliance and trust is so essential and whose members' integrity must be assured to maintain vital public respect, we as attorneys must recognize the importance of a high standard by which our conduct is measured. Even where there is no thought of or intent to do wrong, if our conduct appears to be unethical, we weaken that respect and trust just as surely as if we had purposely violated a specific rule."

Courts have uniformly shared the legal profession's disapproval of the dual role of advocate-witness. See *United States v. Birdman* (C.A. 3, 1979), 602 F.2d 547, 553, and cases cited therein. See, also, Annotation (1985), 35 A.L.R.4th 810.

In Ohio, the only Supreme Court case to discuss these Disciplinary Rules has been *Mentor Lagoons, Inc. v. Rubin, supra.* However, in *Mentor Lagoons,* the issue before us was whether a lawyer was incompetent as a witness. In deciding that DR 5-102 does not automatically render a lawyer incompetent, we set forth a procedure for the court to follow in reaching its determination as to whether a lawyer can serve as both an advocate and a witness: the court must first determine the admissibility of his testimony without reference to the Disciplinary Rules; if the court finds the testimony admissible, the party or court may move for the attorney to withdraw or be disqualified and the court must then consider

---

3. *E.g.,* DR 5-101(A).

whether any exceptions to the Disciplinary Rules are applicable, thus permitting the attorney to testify and continue representation. *Id.* at paragraph two of the syllabus.

Applying this procedure to the instant case, we find it obvious not only that Wiles's testimony was admissible, but also that it was clear that he "ought to be called as a witness on behalf of his client." Wiles had personal knowledge regarding the alleged acts of bad-faith claims handling. He was an active participant in dealings and negotiations beginning shortly after the fire and continuing up to the time the lawsuit was filed. He testified to conversations and actions taken by the insurance company. Thus, his testimony was necessary to prove his client's claims. Moreover, this was not a sudden development. Wiles had known early on that he was a key witness. This fact is attested to in his affidavit which was attached to appellant's memorandum contra Cincinnati's motion for summary judgment. Additionally, the situation became glaringly obvious after Cincinnati's company representatives were deposed, and Wiles knew that these representatives, especially Schwartz, could not recall several key events and discussions. By testifying at trial, the lawyer was able to fill in gaps created by Schwartz's lack of recall of these events and discussions. Moreover, Wiles directly contradicted other facts as testified to by the insurance representatives.

But this does not end our inquiry. Having found Wiles's testimony admissible, we must decide whether any of the exceptions contained within DR 5–101(B) would permit his testimony.

Appellant argues that DR 5–101(B)(4) [4] applies. This exception provides that a lawyer may testify "[a]s to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer * * * as counsel in the particular case." At trial, Wiles failed to make any argument as to why this exception applied. However, the referee apparently found that the exception applied because Wiles had been involved in a meaningful way throughout the development of the case, and disqualification of Wiles would have worked a substantial hardship on 155 North High.

DR 5–101(B)(4) requires a showing of two elements: distinctive value resulting in substantial hardship. While *Mentor Lagoons* mentioned this exception in a footnote, it did not define it. Thus, we consider cases from our appellate courts and those from other jurisdictions.

In a case strikingly similar to ours, involving an insurer's breach of good faith and fair dealing in failing to pay a claim, a Texas appellate court found that DR

---

4. The first three exceptions concern uncontested testimony, formalities, and legal fees, and have no application to this matter.

5–101(B)(4)[5] was inapplicable and held that the trial court abused its discretion in failing to disqualify the trial attorney who also testified as a material witness against the insurer. The Texas court noted that: "This exception generally contemplates an attorney who has some expertise in a specialized area of law such as patents, and the burden is on the attorney seeking to continue representation to prove distinctiveness." *Warrilow v. Norrell* (Tex.App.1989), 791 S.W.2d 515, 520, citing *Supreme Beef Processors, Inc. v. Am. Consumer Indus., Inc.* (N.D.Tex.1977), 441 F.Supp. 1064, 1068–1069. Since the case was relatively straightforward and did not involve complex matters, the Texas court found that the case did not require the sort of expertise envisioned by DR 5–101(B)(4).[6]

In *Mentor Lagoons, Inc. v. Teague* (1991), 71 Ohio App.3d 719, 595 N.E.2d 392, the Eighth District Court of Appeals also required a showing of specialized knowledge in establishing the attorney's distinctive value. The appellate court rejected the notions that intimate familiarity with the case or mere increased expenses met this standard. See, also, *Schaub v. Mentor Lagoons Marina* (May 25, 1990), Lake App. No. 89–L–14–054, unreported, 1990 WL 71023, affirmed (1991), 60 Ohio St.3d 68, 573 N.E.2d 69; *In the Matter of Richardson v. Board of Revision of Cuyahoga Cty.* (Mar. 15, 1979), Cuyahoga App. Nos. 38566, 38567, 38569, 38570, unreported.

We agree with the reasoning employed by these courts. We recognize, of course, the importance of a party's right to be represented by his or her chosen counsel, and we are not unmindful of the inconvenience that may be visited upon that party by reason of counsel's disqualification. However, "distinctive value resulting in substantial hardship" requires more than a showing of mere financial hardship or long-time familiarity with the case. There must be some proof of specialized expertise. Placing the burden of proof upon the attorney seeking the exception is appropriate, as the attorney is in the best position to show why his or her services provide a distinctive value and that the disqualification would result in a substantial hardship to the client. Moreover, once an objection has been entered or a motion made, a trial court must make an independent determination as to whether the exception applies. Once such a ruling has been entered, it can be reversed only if the court abused its discretion.

Accordingly, we hold: DR 5–101(B)(4) is an exception to the general rule of DR 5–102(A) that an attorney cannot serve as both an advocate and witness. The attorney who intends to invoke this exception has the burden to prove that his or her services provide a distinctive value and that his or her disqualification would

---

5. The Texas version of DR 5–101(B)(4) is identical to ours.

6. Although finding an abuse of discretion, the Texas court did not reverse on this issue.

work a substantial hardship on his or her client. Neither familiarity with the case nor mere added expenses are sufficient to prove this exception.

Applying our holding to the present case, we find that Wiles's testimony was necessary to 155 North High's assertion that Cincinnati breached its duty to its insured to act in good faith. Wiles, the principal contact and negotiator for 155 North High, knew or ought to have realized his importance as a witness in the case. Moreover, Wiles knew or should have known this well in advance of trial. Additionally, Wiles did nothing to prove that he had expertise in a specialized area of law. In fact, this civil action was neither particularly complex nor involved. Thus, we find the general prohibition applies, and it is mandatory: a lawyer cannot be both advocate and witness. The trial court abused its discretion in not disqualifying Wiles from representing 155 North High.

The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, PFEIFER and COOK, JJ., concur.