OPINION *Page 2 
{¶ 1} On July 20, 2006, appellants, John A. Casler, Barbara Petee, Cynthia Aumend and Danny Casler, filed a complaint against appellee, Joyce Casler, seeking declaratory judgment to enforce a July 28, 2004 prenuptial agreement between appellee and their deceased father, John W. Casler. Appellants sought a declaration that the prenuptial agreement was effective upon their father's death and applied to the distribution of property.
 {¶ 2} On July 27, 2006, appellee filed an answer. She was represented by Donald Teffner, Esq., the same attorney that had drafted the prenuptial agreement. On August 14, 2006, appellants filed a motion to disqualify Attorney Teffner citing conflict of interest.
 {¶ 3} A hearing was held on October 17, 2006. Attorney Teffner was called as the first witness. Following his testimony, the trial court denied appellants' motion to disqualify. By decision and judgment entry filed November 15, 2006, the trial court journalized its ruling on the motion to disqualify, and ruled the prenuptial agreement was only applicable in the event the parties terminated their marriage therefore, appellee was entitled to exercise any rights of a surviving spouse under the laws of Ohio.
 {¶ 4} Appellants filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO ENFORCE THE PRENUPTIAL AGREEMENT UPON DEATH AND ALLOWING *Page 3 
APPELLEE, AS THE SURVIVING SPOUSE, TO EXERCISE HER RIGHTS TO ELECT AGAINST THE WILL OF JOHN W. CASLER."
 II {¶ 6} "THE TRIAL COURT ERRED IN FAILING TO DISQUALIFY COUNSEL FOR APPELLEE PURSUANT TO DR 5-101(B), DR 5-102(A) AND THEIR APPLICATION."
 I {¶ 7} Appellants claim the trial court erred in refusing to enforce the prenuptial agreement upon the death of the decedent. Specifically, appellants claim the language of the agreement implies it was to be enforced upon death, and clear evidence of the decedent's intent was offered during the hearing. Tangentially, appellants also claim the trial court's language in its decision shows a disregard for the undisputed evidence. We disagree.
 {¶ 8} We will first examine the language of the prenuptial agreement. Appellants point to the following language in the agreement they argue implied the agreement was enforceable upon death:
 {¶ 9} "(D) Each party possess real and personal property in his/her own right and each has fully disclosed in the financial statements attached hereto as Exhibits A and B, which are hereby made a part hereof, the nature, extent and probable value of all property presently owned by each party, together with the nature and extent of his/her liabilities. Furthermore, each party hereby warrants to the other the accuracy of his/her financial statement, and acknowledges that the other is relying upon such statement in entering into this Agreement. *Page 4 
 {¶ 10} "* * *
 {¶ 11} "Therefore, in consideration of the proposed marriage and foregoing premises, and mutual promises, the parties agree as follows:
 {¶ 12} "(1) If either party desires to sell, encumber, transfer, or otherwise dispose of his/her own property, real or personal, tangible or intangible, in whole or in part, then the other, upon request, shall join in, and execute, any and all papers, documents, and legal instruments necessary to effectuate such transaction.
 {¶ 13} "(2) This Agreement constitutes the entire understanding between the parties. It may not be changed, modified, altered, or revoked except in writing, signed by both parties.
 {¶ 14} "(3) This Agreement and all of its provisions shall be construed and enforced in accordance with the laws of Ohio.
 {¶ 15} "(4) In the event of a termination of the parties' marriage by annulment, divorce or dissolution proceedings in a court of competent jurisdiction, this Agreement shall thereupon be conclusive as to the ownership of property brought into the marriage and shall determine the distribution of such assets.
 {¶ 16} "(5) This Agreement becomes effective when the parties' proposed marriage is duly solemnized, and thereupon this Agreement shall bind the parties hereto, and their respective administrators, executors, heirs, assigns, and legal representatives.
 {¶ 17} "(6) If any provision or clause of this Agreement or application thereof to any person or circumstances is held to be invalid, such invalidity shall not affect any *Page 5 
other provisions or applications of this Agreement, each of which shall be given effect, and to this end the provisions of this Agreement are declared to be severable."
 {¶ 18} Appellants argue the language referencing "administrators" and "executors" is a definitive indication of enforceability after death. Further, the parties' separate property remained theirs in their own right and therefore should pass to the heirs and assigns. Appellants also argue the provision that the parties execute "papers, documents, and legal instruments necessary to effectuate" the disposition of the other's property also implies the agreement is enforceable after death.
 {¶ 19} We disagree with these arguments. The standard of review is set forth in Troha v. Sneller (1959), 169 Ohio St. 397, 402:
 {¶ 20} "Although strong and unmistakable language in a prenuptial agreement is necessary to deprive a surviving spouse, and particularly a widow, of the special benefits conferred by statute, we think that the agreement herein was designed and intended to do just that, and that it was the plain intention of the parties to accomplish that object."
 {¶ 21} In Troha, there was strong and unmistakable language of a relinquishment of survivor rights including relinquishment of dower rights, right to a distributive share of personal property, and "all rights or claims in or to the estate." We have no such language sub judice.
 {¶ 22} Appellants argue in In re Estate of Taris, Franklin App. No. 04AP-1264, 2005-Ohio-1516, our brethren from the Tenth District expanded on the general rule of Troha. However, we disagree that Taris is controlling. The language in Taris was more than an implied forfeiture, it was a clear relinquishment of the right to inherit: *Page 6 
 {¶ 23} "Section (11) of the agreement, entitled `Partial Invalidity; survival,' provides:
 {¶ 24} "This Agreement is effective during the lifetime of each of the parties and shall survive the death of each. In the event that any portion hereof is found to be contrary to law by a court of competent jurisdiction, then the other provisions hereof shall nevertheless remain in full force and effect and, as to the portions deemed contrary to law, such language and provisions shall be substituted therefor as shall effectuate the parties' intentions as expressed herein." Taris at ¶ 18.
 {¶ 25} The Taris court concluded the following at ¶ 40:
 {¶ 26} "For these reasons, we find the January 14, 2000 antenuptial agreement executed by appellant and Taris contained `strong and unmistakable' language consistent with Troha. Specifically, Sections (3) and (8), and consequently (1), were all inclusive and intended to release every right accruing to or conferred upon appellant by law in and to the property of Taris upon his death. Further, construing Section (4) as we have, it is consistent with the purpose of Sections (1), (3), and (8). Thus, we find the agreement as a whole was designed and intended to deprive the surviving spouse of the special benefits conferred by statute, and it was the plain intention of the parties to accomplish that object. Therefore, appellant's assignments of error are overruled."
 {¶ 27} In the prenuptial agreement sub judice, there is no "strong and unmistakable" language. The drafter of the agreement, Attorney Teffner, opined the provisions in question were boilerplate language in case either party became unable to exercise his or her legal options. T at 19, 24-25, 29, 31. *Page 7 
 {¶ 28} Apart from the glaring omission of the words "death" or "probate estate" that might signify the desire to adopt Taris, we have no language to support appellants' position.
 {¶ 29} Appellants argue the extrinsic evidence presented by them of their father's intent was disregarded by the trial court because the trial court found the agreement to be ambiguous and construed it against the maker. We reject this argument for the following reasons. Given the simple and direct language of the agreement and the law on prenuptial agreements, we do not find as a matter of law that the agreement is ambiguous. The fact that the trial court did not mention the extrinsic evidence means nothing when a request for specific findings of fact and conclusions were not requested. See, Civ.R .52. Apart from the issue of ambiguity, the trial court could have very easily not believed the witnesses.
 {¶ 30} Although we find the agreement to be unambiguous because of the common law development on prenuptial agreements, we deny this assignment and find the conclusion not to enforce the prenuptial agreement to be correct.
 {¶ 31} Assignment of Error I is denied.
 II {¶ 32} Appellants claim that the trial court erred in not disqualifying Attorney Teffner from representing appellee. We disagree.
 {¶ 33} The decision to disqualify an attorney lies in the trial court's sound discretion. 155 N. High Ltd. v. Cincinnati Ins. Co.
(1995), 72 Ohio St.3d 423. In order to find an abuse of discretion, we must determine the trial court's decision was *Page 8 
unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983) 5 Ohio St.3d 217.
 {¶ 34} At the outset, it would appear that Attorney Teffner, after being called as a witness by appellants and not his client, should have been disqualified:
 {¶ 35} "(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
 {¶ 36} "(1) If the testimony will relate solely to an uncontested matter.
 {¶ 37} "(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
 {¶ 38} "(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
 {¶ 39} "(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." DR 5-101(B).
 {¶ 40} Further, DR 5-102(A) states the following:
 {¶ 41} "(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the *Page 9 
representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4)."
 {¶ 42} However, a review of the record sub judice leads us to conclude the trial court did not abuse its discretion. Appellants called Attorney Teffner on cross. Prior to his testimony, the representative for the estate, John Burton, Esq., invoked the attorney/client privilege. T. at 11, 13-14. Attorney Teffner was prohibited from answering any questions as to the decedent's intent or any directions given to him by the decedent. T. at 26.
 {¶ 43} Attorney Teffner, as the drafter of the prenuptial agreement, offered his opinions on the specific paragraphs in dispute. T. at 19, 24-25, 29, 31. He never testified as to any factual directions given by the decedent. Attorney Teffner did opine he did what the decedent wanted him to do. T. at 23.
 {¶ 44} At the conclusion of the testimony, the trial court made the following findings on the disqualification request:
 {¶ 45} "The Court having heard the testimony and the raising of the privilege issue is making a determination at this time that that motion is not well taken now that he has concluded his testimony before the Court, and it is evident from asking counsel that neither one intends on recalling Mr. Teffner as a witness in this matter. So that will be — that motion to disqualify is denied at this time insomuch as privilege has been raised, thereby preventing disclosure of any material evidence that would be detrimental to the case of plaintiffs, or for that matter, the case of defendant." T. at 32-33.
 {¶ 46} Given Attorney Teffner's testimony taken as a whole, we find the trial court did not err or abuse its discretion in denying the motion to disqualify. *Page 10 
 {¶ 47} Assignment of Error II is denied.
 {¶ 48} The judgment of the Court of Common Pleas of Richland County, Ohio, Probate Division is hereby affirmed.
 FARMER, P.J., EDWARDS, J., AND DELANEY, J., concur. *Page 11 
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, Probate Division is affirmed. *Page 1