OPINION
{¶ 1} Defendant-appellant, David Bowman, appeals from a judgment of the Franklin County Municipal Court convicting him of improperly handling firearms in a motor vehicle, a violation of Whitehall City Code Section 549.04(c)(2). For the reasons that follow, we affirm.
 {¶ 2} On March 30, 2007, defendant was arrested by City of Whitehall police officers and charged with improperly handling firearms in a motor vehicle, a violation of Whitehall City Code Section 549.04(c)(2). On July 24, 2007, the day the case was set for *Page 2 
trial, the prosecution orally moved for the removal of defendant's counsel. A few days later, the trial court filed an entry disqualifying defendant's original trial counsel from representing defendant and continuing the matter until August 27, 2007. Defendant was represented by new counsel when the jury trial began on August 27, 2007.
 {¶ 3} At trial, the prosecution's evidence indicated as follows. On March 30, 2007, City of Whitehall police officer Anthony Fields was dispatched to the home of Matthew Koch to investigate a complaint by Mr. Koch regarding defendant. Officer Fields arrived at Mr. Koch's residence and spoke with him about defendant being in his driveway. Officer Fields was already familiar with defendant from prior contact with him. Mr. Koch did not make any claim to the officer that defendant had threatened him, and he told the officer that defendant was told to leave his property and that defendant complied with that request. Officer Fields testified that, based on what Mr. Koch told him, he determined that defendant had committed no crime at Mr. Koch's residence.
 {¶ 4} As Officer Fields was leaving, Mr. Koch yelled at him and pointed to defendant's vehicle on San Jose Lane. Officer Fields began to follow defendant, stated on his radio that he was going to stop defendant, and requested the assistance of other officers before he would make the stop. Officer Fields testified that the reason he was going to stop defendant was to investigate why he was on Mr. Koch's property and to admonish him not to go back. Officer Fields requested backup because he was aware that defendant had a concealed carry permit and usually carries a handgun on his person.
 {¶ 5} Officer Fields followed defendant on Hamilton Road and then on Etna Road. At the intersection of Etna and Ross Roads, the officer was behind defendant *Page 3 
when he stopped at the stop sign. Defendant turned left at the stop sign. Officer Fields also turned left and observed defendant pull to the curb and exit his vehicle. Officer Fields testified that defendant stopped on his own, and that the officer was not going to stop defendant until other officers arrived. Officer Fields normally turns on his overhead lights to his cruiser when initiating a traffic stop, but in this case he did not have time to so act. Officer Fields testified that defendant "was exiting his vehicle as I was pulling up behind him[.]" (Tr. 10.) Officer Fields stopped his cruiser behind defendant's vehicle and exited the cruiser. Defendant exited his vehicle without any direction or instruction from the officer to exit the vehicle. Officer Fields asked defendant why he pulled over and he said, "`I knew you were going to pull me over so I stopped.'" (Tr. 13.) They spoke with each other, and at some point Officer Fields asked defendant whether he had his gun on his person. After defendant stated that he did, he was arrested.
 {¶ 6} Defendant testified on his own behalf, and his testimony indicated as follows. At the direction of attorney Michael J. Morrissey's secretary, defendant went to the residence of Mr. Koch to gather or verify information regarding Mr. Koch. Once he arrived at Mr. Koch's residence, he stepped out of his vehicle and began to write down information, such as the license number on the truck in Mr. Koch's driveway, and Mr. Koch's height and hair color. Mr. Koch repeatedly asked defendant who he was, to which defendant did not respond because he was gathering the information. Mr. Koch told defendant to leave the property, and defendant walked back to his vehicle and left the area. Defendant drove to his storage unit to retrieve some items and then returned to Whitehall. He drove on Hamilton Road, then Etna Road, and then Ross Road. Defendant saw the police cruiser behind his vehicle just before he turned onto Ross *Page 4 
Road. Defendant stopped his vehicle to place his clipboard in the trunk of his vehicle, and he did not notice any signal from the police cruiser directing him to stop the vehicle.
 {¶ 7} At the conclusion of trial, the jury found defendant guilty as charged.[1] Defendant was sentenced to a 180-day jail term, with time suspended, and community control.
 {¶ 8} Defendant appeals and sets forth the following assignments of error for our review:
 I. THE TRIAL COURT COMMITTED PLAIN AND/OR PREJUDICIAL ERROR IN REMOVAL OF DEFENDANT'S ATTORNEY THE DAY OF TRIAL, EFFECTIVELY DENYING THE DEFENDANT HIS CONSTITUTIONAL RIGHT TO THE ATTORNEY OF HIS CHOICE WITHOUT JUST CAUSE.
 II. THE UNCONTROVERTED EVIDENCE THAT THE DEFENDANT'S VEHICLE WAS NOT "STOPPED" BY THE ARRESTING OFFICER, BUT THAT DEFENDANT ON HIS OWN VOLITION PULLED TO THE CURB AND STOPPED HIS MOTOR VEHICLE, ALLEVIATED THE DEFENDANT FROM THE RESPONSIBILITY TO REMAIN IN THE MOTOR VEHICLE PURSUANT TO SECTION 549.09(c)(2) [sic], WHITEHALL CITY CODE.
 III. EVIDENCE THAT THE ARRESTING OFFICER HAD KNOWLEDGE THAT THE DEFENDANT HAD A CONCEALED CARRY PERMIT, USUALLY CARRIED A GUN ON HIS PERSON, AND USUALLY CARRIED IT INSIDE A "FANNY PACK" ON HIS WAIST, COUPLED WITH THE OFFICER'S QUESTIONING THE DEFENDANT OUTSIDE HIS MOTOR VEHICLE AT LENGTH ABOUT MATTERS TOTALLY UNRELATED TO HIS WEAPON AMOUNTED TO AN IMPLICIT OR TACIT "DIRECTION" BY THE ARRESTING OFFICER FOR DEFENDANT NOT TO BE REQUIRED TO REMAIN IN THE VEHICLE PURSUANT TO THE EXCEPTION SPECIFIED IN SECTION 549.04(c)(2), *Page 5 
AND AS A RESULT DEFENDANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 9} Defendant's first assignment of error alleges that the trial court erred in disqualifying his counsel from representing him in the trial court. Defendant argues that, by removing his counsel, the trial court was denying him his constitutional right of the counsel of his choice.
 {¶ 10} The Sixth Amendment to the United States Constitution guarantees that a criminal defendant shall have the assistance of counsel for his defense. Wheat v. U.S. (1988), 486 U.S. 153, 162-163,108 S.Ct. 1692. The "aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id. at 158. Although a criminal defendant has a "presumptive right to employ his own chosen counsel" (emphasis sic), that "`presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.'" State v. Keenan (1998),81 Ohio St.3d 133, 137, quoting Wheat, 164. Furthermore, "[a] trial court has the `inherent power to regulate the practice before it and protect the integrity of its proceedings * * *' including the `authority and duty to see to the ethical conduct of attorneys * * *.'" Mentor Lagoons, Inc. v.Rubin (1987), 31 Ohio St.3d 256, 259, quoting Royal Indemnity Co. v.J.C. Penney Co. (1986), 27 Ohio St.3d 31.
 {¶ 11} "`[T]he standard of review for determining whether the court erred in its pretrial disqualification of defense counsel is whether it abused its broad discretion.'" State v. Keenan (1998),81 Ohio St.3d 133, 137, quoting State ex rel. Keenan v. Calabrese (1994),69 Ohio St.3d 176, 180. An abuse of discretion involves more than an *Page 6 
error in judgment; it connotes an attitude on the part of the court that is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 12} In Mentor Lagoons, supra, the Supreme Court of Ohio set forth the analysis that a trial court must engage in to determine whether a lawyer can serve as both a litigant's representative and a witness. When an attorney seeks to testify on behalf of a client without withdrawing from representation of the client at trial, the trial court "shall first determine the admissibility of the attorney's testimony without reference to DR 5-102(A)." Id. at 260; see, also, 155 North High, Ltd.v. Cincinnati Ins. Co. (1995), 72 Ohio St.3d 423 (applying MentorLagoons). If the trial court finds that the testimony is admissible, the court must "consider whether any of the exceptions to DR 5-102 are applicable and, thus, whether the attorney may testify and continue to provide representation." Id. at paragraph two of the syllabus; see155 North High, Ltd. "In making these determinations, the court is not deciding whether a Disciplinary Rule will be violated, but rather preventing a potential violation of the Code of Professional Responsibility." Mentor Lagoons, at paragraph two of the syllabus.
 {¶ 13} DR 5-102(A) generally required the withdrawal of a lawyer if it became "obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client." DR 5-101(B) set forth the following exceptions:
 (1) If the testimony will relate solely to an uncontested matter.
 (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
 (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the firm to the client. *Page 7 
 (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or the firm as counsel in the particular case.
 {¶ 14} Effective February 1, 2007, the Rules of Professional Conduct superseded and replaced the Code of Professional Responsibility, and governs the conduct of lawyers occurring on or after that effective date. Thus, unlike in Mentor Lagoons, the Rules of Professional Conduct governed the conduct of the lawyers in this matter.
 {¶ 15} Prof. Cond. Rule 3.7, which replaced DR 5-101(B) and 5-102, provides in part as follows:
 (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:
 (1) the testimony relates to an uncontested issue;
 (2) the testimony relates to the nature and value of legal services rendered in the case;
 (3) the disqualification of the lawyer would work substantial hardship on the client.
 {¶ 16} Defendant argues that his counsel's testimony was not "necessary," and thus the ethics rule did not apply. Defendant asserts that the lawyer must be "an indispensable witness against the defendant (his client) for the court to even begin to consider circumstances excepting the attorney from the operation of the rule." (Defendant's brief, at 10.) Defendant additionally argues that testimony by his counsel as to why he was at Mr. Koch's property would have concerned a collateral matter that would not have been "connected in any way to the offense of improper handling of a firearm in a motor vehicle." Id. at 11. We find these arguments unpersuasive. *Page 8 
 {¶ 17} Even though Prof. Cond. Rule 3.7 has replaced DR 5-101(B) and 5-102, the analytical process set forth in Mentor Lagoons remains appropriate when applying the new rules. See Horen v. Toledo Pub. SchoolDist. Bd. of Edn., Lucas App. No. L-07-1131, 2007-Ohio-6883. InMentor Lagoons, the Supreme Court of Ohio did not analyze whether the lawyer "ought to be called as a witness," but simply resolved that a trial court must first determine the admissibility of the lawyer's testimony without reference to DR 5-102(A). Additionally, although the trial court must analyze whether an issue is uncontested, the procedure set forth in Mentor Lagoons does not require the trial court to engage in an analysis of whether potential testimony of a lawyer concerns a central or collateral matter.
 {¶ 18} In this case, it was brought to the trial court's attention that there was a "significant potential" that defendant's counsel would be called to testify as a rebuttal witness. (Tr. 5.) Defendant's counsel explained to the trial court that he did not instruct defendant to go to Mr. Koch's property, but simply told his secretary to let defendant know that he wanted to speak with him. Hence, defendant's counsel's testimony would have been relevant to the issue of why defendant was at Mr. Koch's property, and potentially could have been used by the city to rebut defendant's testimony on the issue.
 {¶ 19} We find that the trial court properly determined that the testimony of defendant's trial counsel would have been admissible at trial. We further find that the trial court correctly determined that none of the exceptions set forth in Prof. Cond. Rule 3.7(a)(1)-(3) are applicable to the case at bar. Therefore, we conclude that the trial court followed the procedure set forth in Mentor Lagoons, notwithstanding the fact that Prof. Cond. Rule 3.7 replaced DR 5-101(B) and 5-102. *Page 9 
 {¶ 20} Not only would defendant's counsel's testimony have been admissible, allowing him to remain as counsel reasonably would have created confusion and/or risked a conflict of interest under the facts of this case. While acting as an advocate on defendant's behalf, defendant's counsel could have been called as a witness by the city in an attempt to rebut testimony of defendant. If called as a witness, defendant's counsel's testimony would have been, at a minimum, inconsistent with defendant's explanation for why he was at Mr. Koch's property.
 {¶ 21} Under the circumstances of this case, we cannot find that the trial court abused its discretion by disqualifying defendant's original trial counsel from representing defendant before that court. Accordingly, we overrule defendant's first assignment of error.
 {¶ 22} Because they involve interrelated issues, we will address defendant's second and third assignments of error together. Defendant's second assignment of error essentially alleges that there was insufficient evidence to support his conviction for improperly handling firearms in a motor vehicle. By his third assignment of error, defendant argues that his conviction was against the manifest weight of the evidence.
 {¶ 23} In determining the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, *Page 10 
paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact.State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 24} When assessing whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "`whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Furthermore, "`[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387.
 {¶ 25} Defendant was convicted of violating Whitehall City Code 549.04(c)(2), which provides, in pertinent part, as follows:
 (c) No person who has been issued a license or temporary emergency license to carry a concealed handgun under Ohio R.C. 2923.125 or 2923.1213
shall do any of the following:
 * * *
 (2) If the person is the driver or an occupant of a motor vehicle that is stopped as a result of a traffic stop or a stop for another law enforcement purpose and if the person is transporting or has a loaded handgun in the motor vehicle in any manner, knowingly fail to remain in the motor vehicle while stopped * * * unless the failure is pursuant to and in accordance with directions given by a law enforcement officer. *Page 11 
 {¶ 26} In this appeal, defendant does not contend that he had not been issued a license to carry a concealed handgun, or that he did not have a loaded handgun on his person. Instead, defendant argues that the ordinance was inapplicable because he was not stopped by the police. Defendant asserts that he stopped his vehicle on his own volition, without direction by the police officer. The city argues that defendant admitted that he pulled to the curb because he anticipated that the police would stop him. The city asserts that defendant is essentially arguing that a citizen with a handgun and concealed carry permit, who anticipates getting stopped by the police, can control the situation by stopping on his or her own and thereby eliminate the requirement to stay in the vehicle.
 {¶ 27} Whitehall City Code 549.04(c)(2) is clearly intended to protect law enforcement officers when they encounter any driver or occupant of a motor vehicle, who has been issued a concealed carry license, and who is transporting or has a loaded handgun in the motor vehicle, as it requires such a person to remain in the vehicle and to keep his or her hands in plain sight. Furthermore, we resolve that the legislative body that enacted Whitehall City Code 549.04(c)(2) did not intend to limit the applicability of the ordinance to circumstances involving a seizure within the meaning of the Fourth Amendment to the United States Constitution.
 {¶ 28} Officer Fields testified that he followed defendant because he was going to stop him when other officers arrived, and that before he could turn on the overhead lights on his cruiser, defendant stopped his vehicle on the side of the road. Officer Field's testimony also indicated that he confronted defendant because he wanted to speak with him to further investigate the reason he was on Mr. Koch's property, and to advise him not to return to the property. Additionally, testimony at trial indicated that defendant *Page 12 
stopped his vehicle because he anticipated that the officer in the cruiser behind his vehicle was going to stop him. According to Officer Fields' testimony, when he asked defendant why he pulled over, defendant said, "I knew you were going to pull me over so I stopped." Furthermore, evidence demonstrated that, after stopping his vehicle, defendant exited the vehicle with a handgun on his person and approached the officer.
 {¶ 29} Defendant additionally argues that he did not violate Whitehall City Code 549.04(c)(2) because the law enforcement officer "implicitly" or "tacitly" directed him to remain outside the vehicle. Defendant correctly notes that there is an exception to the requirement under Whitehall City Code 549.04(c)(2) that the person must remain in the motor vehicle, when the failure to remain in the vehicle is pursuant to and in accordance with directions given by a law enforcement officer. However, there was no evidence in this case that the officer, in any way, directed defendant to exit his vehicle.[2] Despite the absence of any such evidence, defendant seeks an application of the exception by arguing that the officer implicitly or tacitly indicated to defendant that it was permissible to remain outside the vehicle. The fallacy of this argument is that defendant had already exited the vehicle when the officer allegedly approved of his actions. Furthermore, the fact that the officer did not immediately arrest defendant did not somehow negate the fact that defendant had exited the motor vehicle without any direction by the officer to so act.
 {¶ 30} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a *Page 13 
reasonable doubt. Moreover, this is not the exceptional case in which the evidence weighs heavily against the conviction. Consequently, we conclude that defendant's conviction for improperly handling firearms in a motor vehicle, a violation of Whitehall City Code Section 549.04(c)(2), was supported by sufficient evidence and was not against the manifest weight of the evidence. Accordingly, defendant's second and third assignments of error are overruled.
 {¶ 31} Having overruled all three of defendant's assignments of error, the judgment of the Franklin County Municipal Court is affirmed.
Judgment affirmed.
SADLER and T. BRYANT, JJ., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The trial court's sentencing entry states that defendant pled guilty to improperly handling firearms in a motor vehicle. However, the parties do not dispute, and the record reflects, that defendant was found guilty of the offense by a jury.
[2] Although not separately assigning it as an alleged error, defendant contends that the trial court should have instructed the jury that it is not a violation of Whitehall City Code Section 549.04(c)(2) if the failure to remain in the motor vehicle is a consequence of the person following directions given by a law enforcement officer. Because there was no evidence presented at trial that any such direction was given, this argument is unavailing. See State v. Comen (1990),50 Ohio St.3d 206, paragraph two of the syllabus (holding that "a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.") *Page 1