DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellants, Popa Land Co., Ltd. and Joanne Aiello, Personal Representative of the Estate of Joseph Popa (collectively "Popa"), appeal from the judgment of the Medina County Court of Common Pleas disqualifying their counsel, Harold Pollock, and his law firm, Harold Pollock Co., L.P.A., from representing them in this matter. This Court affirms.
 I {¶ 2} This appeal originates from the settlement agreement resolving the underlying claims in Popa Land Co. Ltd., et al. v. Fragnoli, Medina County Common Pleas No. 05CIV1206 ("Fragnoli I "). Fragnoli I was filed in September 2005 and dealt with a dispute over drainage problems and subsequent driveway damage to a common driveway serving multiple lots in the Lakeview Rural Subdivision. Several landowners were named as defendants, including: Richard and Rebecca Fragnoli, Frank and Sandra Austin, Steven and Judith Strang, and Mario and Karen Pierzchala (collectively "Fragnoli"). In November 2006, the parties resolvedFragnoli I by *Page 2 
means of a settlement agreement which required the reconstruction and relocation of the common driveway.
 {¶ 3} On June 4, 2007, Popa filed a second suit against Fragnoli which serves as the underlying case upon which this appeal is based ("Fragnoli II"). In Fragnoli II, Popa asserted claims for breach of contract, trespass, and property injury, essentially alleging that Fragnoli breached the terms of the settlement agreement entered into by the parties in Fragnoli I.
 {¶ 4} Pollock represented Popa in Fragnoli I and continued as Popa's counsel in Fragnoli II. Likewise, Lee Skidmore represented Fragnoli in both Fragnoli I and Fragnoli II. Fragnoli II was set for trial in April 2008 and in preparation for trial, Popa identified Fragnoli's counsel, Skidmore, as a witness. Fragnoli did not identify any attorneys on its witness list.
 {¶ 5} In response to being identified as a witness, Skidmore filed a motion in limine to exclude his testimony. Following a hearing on that motion in April 2008, the trial court denied Skidmore's motion and concluded that Skidmore could be called to testify in Fragnoli II.
Skidmore indicated at the hearing that he was withdrawing from the case based on the court's determination that he may be called to testify. During the course of that hearing, Pollock asserted that he may have to testify at trial on his clients' behalf and was motivated to do so because he felt his testimony would benefit, not prejudice, his clients. Based on these events, the trial was continued to July, 21, 2008, to provide Fragnoli with time to obtain new counsel.
 {¶ 6} Following Skidmore's withdrawal, Mark Stasitis, another attorney from Skidmore's firm, entered his appearance as Fragnoli's counsel, along with co-counsel Clark Rice (from a different firm). Popa then requested that the entire firm of Skidmore and Hall, Co., L.P.A. and any attorney employed by it be disqualified from representing Fragnoli inFragnoli II. The trial court did not rule on Popa's motion to disqualify Skidmore's law firm. *Page 3 
 {¶ 7} On July 14, 2008, Fragnoli filed a motion to disqualify Pollock from representing Popa in Fragnoli II. On the date of trial, the trial court held a hearing on Fragnoli's motion and granted it. Thus, Pollock was disqualified from representing Popa in Fragnoli II. Popa now appeals the trial court's ruling, asserting three assignments of error for our review.
 II Assignment of Error Number One "THE TRIAL COURT ERRED IN DISQUALIFYING APPELLANTS' COUNSEL HAROLD POLLOCK CO., L.P.A. WHERE THE MOTION TO DISQUALIFY COUNSEL WAS NOT TIMELY FILED[.]"
 {¶ 8} In its first assignment of error, Popa alleges that the trial court erred in granting Fragnoli's motion to disqualify Pollock because "lengthy proceedings have taken place." Thus, Popa argues that the motion was untimely and should have been denied. We disagree.
 {¶ 9} We review a trial court's ruling on a motion to disqualify counsel for an abuse of discretion. Avon Lake Mun. Utils. Dept. v.Pfizenmayer, 9th Dist. No. 07CA009174, 2008-Ohio-344, at ¶ 13. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. A trial court can raise the issue of counsel's disqualification sua sponte if it identifies that counsel may have to act as both an advocate and a witness. Quigley v. Telsat, Inc., 9th Dist. No. 23481, 2007-Ohio-2884, at ¶ 7, citing Mentor Lagoons, Inc. v. Rubin (1987), 31 Ohio St.3d 256, paragraph two of the syllabus.
 {¶ 10} Popa asserts that the motion to disqualify Pollock was untimely because it was not filed until the week before trial, despite Fragnoli being aware that Pollock would act as Popa's counsel since he filed the case in June 2007. Popa further asserts that Fragnoli effectively waived its right to seek Pollock's disqualification by waiting so long to do so after the case had *Page 4 
been filed. Finally, Fragnoli directs this court to case law supporting the proposition that disqualification should not occur "after lengthy proceedings have taken place." In re Disqualification of Pepple (1989),47 Ohio St.3d 606; see, also, In re Disqualification of Murphy (1989),36 Ohio St.3d 605; and In re Disqualification of Walker (1988),36 Ohio St.3d 606.
 {¶ 11} Initially, we note that the authority cited by Popa on appeal deals with the disqualification of the judge in a case, not the disqualification of an attorney. This Court and others have held that "[t]imeliness [of a motion to disqualify counsel] is not a fixed concept, but generally courts have held that the proper time within which to raise an objection is soon after the onset of litigation, *** or at least within a reasonable time once the facts are known." (Internal citation omitted.) Sarbey v. Natl. City Bank, Akron (1990),66 Ohio App.3d 18, 28 (granting a motion to disqualify approximately seven months after the complaint was filed); see, also, Karaman, et al., v.Pickrel, Schaeffer Ebeling Co., et al., 2d Dist. No. CA21813,2008-Ohio-4139 (granting disqualification of counsel nearly two years after complaint was filed). Though Popa asserts that Fragnoli "should have made a motion [to disqualify Pollock] at the inception of this case," we note that Popa did not file its motion to disqualify Fragnoli's counsel until April 23, 2008, over ten months after the complaint was filed. Furthermore, Pollock's assertions at the April 2008 hearing that he may testify on his client's behalf caused Fragnoli to request a discovery deposition of Pollock. Upon deposing Pollock on July 2, 2008, and learning that he unequivocally intended to testify as to the terms of the settlement agreement that he helped structure and approve in Fragnoli I, Fragnoli subsequently filed its motion to disqualify Pollock on July 14, 2008. Thus, we conclude that Fragnoli's motion to disqualify Pollock was timely filed subsequent to deposing him as to the nature of his intended testimony. Accordingly, Popa's first assignment of error is without merit and is overruled. *Page 5 
 Assignment of Error Number Two "THE TRIAL COURT ERRED IN DISQUALIFYING POLLOCK AS COUNSEL WHERE SUCH DISQUALIFICATION WOULD WORK A SUBSTANTIAL HARDSHIP ON APPELLANTS."
 {¶ 12} In its second assignment of error, Popa argues that the trial court erred because it did not make any findings that Pollock was a "necessary witness" under Prof.Cond.R. 3.7. Popa further asserts that Pollock can remain as its counsel based on the exception to Prof.Cond.R. 3.7, which permits counsel to remain in the case if "disqualification of the lawyer would work substantial hardship on the client." Because Pollock has represented Popa in this matter since 2003, Popa argues it would suffer substantial hardship by incurring "huge costs" to retain new counsel or to get current co-counsel conversant in the case. Additionally, Popa argues that Pollock's disqualification would cause substantial hardship to Popa because of the distinctive value Pollock brings to the case, that being his expertise in real estate and extensive knowledge of this case. We disagree.
 {¶ 13} The burden of proving that disqualification is necessary rests with the moving party, while the burden of proving that an exception applies rests with the attorney seeking to employ the exception.Brown v. Spectrum Networks, Inc., et al., 1st Dist. No. C-070821,2008-Ohio-6687, at ¶ 13; see, also, Quigley at ¶ 11, citing 155 N. High,Ltd. v. Cincinnati Ins. Co. (1995), 72 Ohio St.3d 423, 429.
 {¶ 14} Prof.Cond.R. 3.7 is captioned "Lawyer as Witness" and provides that:
 "(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:
 "(1) the testimony relates to an uncontested issue;
 "(2) the testimony relates to the nature and value of legal services rendered in the case; *Page 6 
 "(3) the disqualification of the lawyer would work substantial hardship on the client." (Emphasis in original.)
The rule is stated as an imperative; that is, counsel is not permitted by the rule to be both an advocate and a witness unless one of the exceptions applies.
 {¶ 15} This Court recently addressed disqualification under Prof.Cond.R. 3.7 in Puritas Metal Products, Inc., et al., v. Cole, 9th Dist Nos. 07CA009255, 07CA009257, 07CA009259, 2008-Ohio-4653. There, we concluded based on how other courts have applied rules identical to Prof.Cond.R. 3.7, that a "necessary witness" is someone whose proposed testimony is "relevant and material" and "unobtainable elsewhere."Puritas at ¶ 31-38; see, also, Brown at ¶ 14-15. Stated differently, counsel's testimony must be admissible and unobtainable through other trial witnesses.
 {¶ 16} As the movant, it was Fragnoli's burden to prove that Pollock was a necessary witness. At the hearing and in its disqualification motion, Fragnoli pointed to Pollock's deposition testimony where he admits to being an integral part of structuring and reviewing the settlement agreement purportedly resolving Fragnoli I. Furthermore, in the affidavit attached to Popa's motion to disqualify Skidmore, Pollock attests to the role he played in the negotiation, preparation, and execution of settlement agreement as follows:
 "*** During Fragnoli I [I] had numerous conversations with Skidmore.
 "In approximately mid-2006 Skidmore informed me that Popa Land had improperly constructed a portion of Driveway I outside of the boundaries of the driveway in issue (Driveway I).
 "I was unaware of that fact prior to that time, and stated that if the litigation were settled, and Driveway I rebuilt, every effort should be made to build the driveway within the confines of the subject easement (Easement I), but that if the driveway overlapped the easement to any extent that all affected owners should sign an amended plat agreeing to the location of the driveway and granting reciprocal easements.
 "Skidmore indicated his agreement with this concept. *Page 7 
 "We never discussed the Pierzchala property in that conversation or the existence of a second easement on that property for a second driveway.
 "***
 "In the course of those discussions, Skidmore had lengthy conversations wherein he spoke directly to me, Joseph Popa, and Joanne Aiello.
 "At no time in any of those discussions while I was present did Skidmore reveal that [the Fragnoli I] Defendants were intending to, or even considering, moving a portion of Driveway I onto Easement 2.
 "***
 "When I reviewed *** the settlement agreement I read it in the context of understanding with Skidmore that Driveway I would be placed within Easement I on the Fragnoli panhandle, since Easement I was the only easement involved in Fragnoli I and that was specifically what we discussed.
 "Skidmore also purported in the Settlement Agreement to characterize the driveway easements created by the LRR plat as a single easement serving seven lots.
 "***
 "I now know that Skidmore intentionally mischaracterized the two plat easements as one easement[.] ***"
Additionally, Popa asserts in its brief that Pollock "is in a unique position to represent [Popa]"; has "extensive knowledge of these matters"; and seeks to proffer his testimony because it will be "beneficial" to his client.
 {¶ 17} We note that the trial court ruled on the disqualification motion in this case before we examined Prof.Cond.R. 3.7 in Puritas MetalProducts. In determining whether Pollock was a necessary witness under the rule, the trial court only determined whether Pollock's testimony would be "admissible"; it did not address whether the testimony would be unavailable elsewhere as we required in Puritas Metal Products. We conclude, however, that there is sufficient evidence in the record to support a finding that Pollock's testimony would, in fact, be
unobtainable from another witness. Specifically, Pollock readily asserts that he and Skidmore *Page 8 
were the primary negotiators and drafters of Fragnoli I's settlement agreement. Furthermore, part of Popa's argument on appeal is that Pollock must remain in the case because he is the only party with the requisite knowledge and expertise to adequately testify to the settlement of Fragnoli I. Accordingly, the record supports a finding that Pollock is a "necessary witness" in Fragnoli II.
 {¶ 18} We now turn to Popa to determine if it has proffered evidence to support a finding that one of the exceptions to Prof.Cond.R. 3.7 applies, which would permit Pollock to remain as its counsel inFragnoli II. The record reflects that Pollock's testimony would relate directly to a contested matter in this case and would not address the value of legal services in this case. See Prof.Cond.R. 3.7(a)(1)/(2). Therefore, the only possible exception to permit Pollock's continued representation is if his disqualification "would worksubstantial hardship" on Popa under Prof.Cond.R. 3.7(a)(3).
 {¶ 19} Popa argues that Pollock's disqualification would be a substantial hardship based on his vast knowledge of its case and the distinctive value he holds in representing it. Popa directs this Court to the Sixth District's analysis of Prof.Cond.R. 3.7 in Horen v. ToledoPub. School Dist. Bd. of Education, 6th Dist. No. L-07-1131,2007-Ohio-6883, in support for its contention that Pollock's continued representation constitutes a distinctive value to it. In Horen, the court looked to prior disciplinary rules D.R. 5-101(B) and 5-102 for guidance on interpreting the newly effective Prof.Cond.R. 3.7. D.R. 5-101(B)(4) stated that:
 "A lawyer shall not accept employment *** if the lawyer knows or it is obvious that the lawyer *** ought to be called as a witness, except that the lawyer may undertake employment and *** may testify *** [a]s to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or the firm as counsel in the particular case." (Emphasis added.) *Page 9 
 {¶ 20} The Horen court incorporated the "distinctive value" concept from the former disciplinary rules into its analysis of whether disqualification will be a substantial hardship under the newly adopted Prof.Cond.R. 3.7(a)(3). We, however, decline to do so, and reject Popa's argument in support of breathing life back into this concept. As of February 2007, D.R. 5-101(B) and 5-102 were replaced, in total, by Prof.Cond.R. 3.7. See Comparison to former Ohio Code of Professional Responsibility (following the "Official Comment" to Rule 3.7). Prof.Cond.R. 3.7 unambiguously states that the trial court need only consider arguments related to the "substantial hardship" that disqualification would create for the client. A court need not consider whether the lawyer facing disqualification brings a distinctive value to the case.
 {¶ 21} Popa argues that it would be a substantial hardship if Pollock were disqualified because it would face "huge costs *** related to having current co-counsel learn all the facts regarding this case" or it may need to seek new lead counsel with real estate expertise who would have to start from the beginning of the case. The Supreme Court has specifically rejected this argument in determining that "substantial hardship requires more than a showing of mere financial hardship."155 North High, Ltd., 72 Ohio St.3d at 429. We, too, have determined that "substantial hardship does not involve increased expenses associated with the hiring of a new lawyer" State Employment Rel. Bd. v.Springfield Local School Dist. Bd. of Ed. (1995), 104 Ohio App.3d 191,196. Additionally, "long-time familiarity with the case" does not constitute substantial hardship either, particularly in light of the fact that the underlying cause of action in Fragnoli II, though dealing with a real estate matter, is a breach of contract claim. 155 NorthHigh, Ltd., 72 Ohio St.3d at 429. Pollock's testimony would address the terms of the parties' settlement agreement and his factual knowledge about the agreement reached in Fragnoli I. Therefore, Pollock's knowledge and experience in real estate law are not central to his *Page 10 
continuing as counsel in this case or being called as a fact witness inFragnoli II. Accordingly, Popa has failed to meet its burden in establishing Pollock's disqualification will constitute a substantial hardship.
 {¶ 22} Moreover, Popa admits that Pollock has co-counsel in this case. The record reveals that Pollock's co-counsel co-signed the complaint initiating Fragnoli II and has attended hearings in the case. The trial court found that "the disqualification of Mr. Pollock would work a hardship to the client[,] *** [but it did] not find the disqualification of Mr. Pollock would work a substantial hardship on the client as outlined in *** Rule 3.7." We agree and therefore conclude that the trial court did not abuse its discretion in disqualifying Pollock from serving as Popa's counsel in Fragnoli II. Accordingly, Popa's second assignment of error is overruled.
 Assignment of Error Number Three "THE TRIAL COURT ERRED IN DISQUALIFYING POLLOCK WITH NO SHOWING OF PREJUDICE TO APPELLANTS[.]"
 {¶ 23} In its third assignment of error, Popa argues that under the former rules, namely D.R. 5-102(B), Fragnoli would have been required to make a showing that Pollock's representation would have prejudiced Popa before Pollock could be disqualified. Popa further asserts that there was no evidence proffered to support a finding that Popa was going to be prejudiced by Pollock's testimony. Instead, Popa asserts that Fragnoli only argued the prejudice that Fragnoli was going to suffer when Pollock testified, which Pollock argues is not a consideration. We disagree.
 {¶ 24} It is true that D.R. 5-102(B) permitted a lawyer to continue to represent a client after learning the lawyer would be called as a witness. The rule allowed for continued representation until it was "apparent that [the] testimony is or may be prejudicial to [the lawyer's] client[,]" at which point the lawyer was required to withdraw as counsel in the case. *Page 11 
 {¶ 25} The new rule, however, no longer conditions a lawyer's continued representation based on a showing of prejudice to the client. In Comment 4 to Prof.Cond.R. 3.7, the court is instructed to balance "the interests of the client and those of the tribunal and the opposing party." The comment further explains:
 "Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client." (Emphasis added.) Prof.Cond.R. 3.7, Comment 4.
 {¶ 26} While Pollock's argument may have been persuasive under D.R. 5-102(B), the current Professional Conduct Rules do not require a showing of prejudice to the lawyer's client. Instead, the rule requires a court contemplate the prejudice to the opposing party while simultaneously considering the impact disqualification will have on the lawyer's client. There is no evidence that the trial court abused its discretion in ordering Pollock's disqualification pursuant to Prof.Cond.R. 3.7. Popa's argument is without merit and its third assignment of error is overruled.
 {¶ 27} In closing, we note that, given the unique role both counsel played in reaching the settlement agreement resolving Fragnoli I and the nature of the underlying complaint in Fragnoli II, it is unclear to this Court whether either counsel adequately considered the impact of Prof.Cond.R. 3.7 at the time the Fragnoli II complaint was filed.
 III {¶ 28} Popa's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed. *Page 12 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
BETH WHITMORE FOR THE COURT
MOORE, P. J. BELFANCE, J. CONCUR *Page 1